

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1658-11

**MARICELA RODRIGUEZ GUTIERREZ, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### SMITH COUNTY

PRICE, J., delivered the opinion of the Court in which MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined. KELLER, P.J., concurred in the result.

### O P I N I O N

The trial court revoked the appellant's community supervision because she failed to comply with a condition that required her either to obtain legal status to remain in this country within twelve months or else "leave the country and reside in a location where [she does] have a legally authorized status." The appellant failed to object to this condition at the

time it was imposed and, in fact, twice requested an extension of the time allotted for her to comply with it before the State filed its motion to revoke. The Texarkana Court of Appeals nevertheless reversed the trial court's revocation order, holding that the community supervision condition that she leave the country "could not be enforced" because it invaded the prerogative of the federal government to decide whether to remove illegal immigrants from the United States.[1] We granted the State's petition for discretionary review in order to examine this holding.[2] We now affirm.

## FACTS AND PROCEDURAL POSTURE

### In the Trial Court

The appellant was indicted for the offense of possession of cocaine in an amount greater than four and less than 200 grams, a second degree felony.[3] Pursuant to a plea agreement, the appellant pled guilty to this offense on April 19, 2004. On May 12, 2004, the trial court sentenced the appellant to ten years' confinement in the penitentiary but suspended the sentence, placing her on community supervision for ten years—all in accordance with the

---

[1] *Gutierrez v. State*, 354 S.W.3d 1, 7 (Tex. App.—Texarkana 2011).

[2] TEX. R. APP. P. 66.3(a), (b) & (c). At least one other court of appeals has held, albeit in an unpublished opinion, that a defendant's failure to object to a condition of community supervision that he must remain in Honduras, his native country, for the duration of his probationary period constituted a forfeiture of any appellate complaint to revocation based upon a violation of that condition. *Garcia v. State*, No. 08-03-00296-CR, 2005 WL 1361692 (Tex. App.—El Paso, delivered June 9, 2005) (not designated for publication).

[3] TEX. HEALTH & SAFETY CODE §§ 481.102(3)(D) & 481.115(d).

recommendation of the State in keeping with the plea agreement reached by the parties. As one of the conditions of community supervision, the trial court announced in open court that it was

> also going to order that you file for your appropriate legal status through the Department of Homeland Security, or whichever federal agency that is in charge of that these days. And that you do that within 90 days of this date and that you provide notice to your probation officer in proof of that, that you have in fact followed up and done that. You can't control how fast they act on their processing that application, but you can promptly get it filed.

The trial court also informed the appellant that she would receive a written copy of the terms and conditions of her community supervision before she left the courtroom. The record does in fact contain a written memorialization of the above condition, signed by both the appellant and the judge on the same day as the sentencing hearing, May 12th. In addition, the written terms and conditions informed the appellant: "At the end of twelve (12) months from the date probation begins, if you have not obtained legal status from the [United States Bureau of Immigration and Customs Enforcement] for being within Smith County, Texas, you must leave the country and reside in a location where you do have a legally authorized status." Although these conditions were not, for all the record reveals, an integral part of the plea agreement by the parties, the appellant voiced no objection to them.

Over the course of the next six years, at the appellant's request, the trial court twice extended the allotted period of time that it had originally granted the appellant to "obtain legal status"—first until May 12, 2007 (three years to the day after the condition was

originally imposed), and then again until May 12, 2010 (three years after the expiration of the first extension). On July 19, 2010, the State filed a motion to revoke the appellant's community supervision. As grounds for revocation, the State alleged that, as of May 12, 2010, the appellant had neither (1) provided proof to her probation officer that she had applied for legal status, nor (2) left the country. No other basis for revocation was alleged. The trial court conducted a hearing on the State's motion to revoke on December 1, 2010. At the outset of the hearing, the State abandoned the first alleged basis for revocation, electing to proceed only on the allegation that the appellant had failed to leave the country. Represented by different counsel than at the initial plea proceedings in 2004, the appellant pled true to that violation. At no time did she complain that the probationary condition that she leave the country was objectionable to her in any way. The trial court ordered that the appellant's community supervision be revoked exclusively on the basis of her failure to leave the country. It then reduced the appellant's sentence to five years' confinement in the penitentiary, entered judgment accordingly, and certified the appellant's right to appeal.

### In the Court of Appeals

For the first time on appeal, the appellant complained that the trial court erred in revoking her community supervision on the basis of a violation of the condition that she leave the country should she fail to timely obtain legal status. On the authority of this

Court's opinion in *Hernandez v. State*,[4] the appellant argued that the sole condition upon which her community supervision was revoked was invalid because it impinged upon the federal government's exclusive power to regulate the removal of illegal aliens, in violation of the Supremacy Clause of the United States Constitution.[5] The State acknowledged that, consistent with *Hernandez*, the trial court lacked the authority to order the appellant to leave the country, but countered with *Speth v. State*,[6] in which we later held that complaints about a condition of community supervision are ordinarily procedurally defaulted for appellate purposes if not first raised in the trial court. Indeed, the very claim that Speth attempted to raise for the first time on appeal from his revocation proceeding was apparently that the trial court lacked the *authority* to impose several of the conditions about which he complained.[7]

---

[4] 613 S.W.2d 287 (Tex. Crim. App. 1981) (opinion on reh'g).

[5] U. S. CONST. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

[6] 6 S.W.3d 530 (Tex. Crim. App. 1999) (hereinafter, "*Speth II*").

[7] We did not explicitly say so in *Speth* itself, but we did observe that, in the cases upon which Speth relied, the appellants were permitted to raise the issue of unauthorized *sentences* for the first time on appeal, and it was these cases that we distinguished. *Speth*, *supra*, at 531-32. *See also Speth v. State*, 965 S.W.2d 13, 16-17 (Tex. App.—Houston [14th Dist.] 1998) (hereinafter, "*Speth I*") (sustaining Speth's second and fifth points of error complaining that conditions of probation were, *inter alia*, "unauthorized by law"). From this circumstance, Professors Dix and Schmolesky have deduced the import of our holding in *Speth* to be—categorically—that "a complaint that [a condition of community supervision] is unauthorized must be raised in the trial court." George E. Dix & John M. Schmolesky, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 53:148, at 1172 (3rd ed. 2011).

But the appellant in *Hernandez* did not object at the trial court level either, and yet this Court, holding that any condition of probation that encroaches upon the federal government's monopoly upon matters of alien deportation is "void," nevertheless overturned the revocation of his probation—without making any reference to procedural default.[8]

Ruling in the appellant's favor, the court of appeals declared that "we do not believe that *Speth* and *Hernandez* are mutually exclusive."[9]  The court of appeals reasoned:

> According to *Speth*, [one] can contract for, and be bound by, unconstitutional conditions of community supervision, such conditions being described by the court as a "defect."  Failure to object results in waiver of the defect.  But *Hernandez* says the trial court had no power to do what it did.  According to *Hernandez*, the unlawful condition, one the court had no authority to employ, was void and thus could not be enforced.  The condition is not merely unreasonable, and it does not merely violate a constitutional right of the defendant.  It violates the exclusive authority of the United States of America to absolutely control immigration to, and banishment from, the United States.  The condition itself violated the Supremacy Clause of the United States Constitution.[10]

The court of appeals therefore reversed the trial court's order revoking the appellant's community supervision, concluding that "the condition is void, and that the revocation, premised solely on [the appellant's] violation of that condition, cannot stand."[11]

---

[8] *Hernandez*, *supra*, at 290.

[9] *Gutierrez*, *supra*, at 6.

[10] *Id*. at 7.

[11] *Id*.

## On Discretionary Review

In its brief on discretionary review, the State now challenges the court of appeals's holding on what amounts to two grounds. First, the State argues, the court of appeals's purported distinction between *Speth* and *Hernandez* is invalid. *Speth* reiterated that probation is essentially a contractual relationship between the court and the defendant, "and conditions thereof are terms of the contract entered into between the trial court and the defendant."[12] "A defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial to conditions he finds objectionable."[13] Thus, the State maintains, issues with respect to the validity, *vel non*, of conditions of community supervision do not implicate the kind of absolute requirements rights or prohibitions that are so fundamental as to be "not optional" with the parties under the rubric of *Marin v. State*.[14] Therefore, concludes the State, even a

---

[12] *Speth II*, *supra*, at 534. *See also McDonald v. State*, 442 S.W.2d 386, 387 (Tex. Crim. App. 1969) ("This Court has consistently held that where the trial court grants probation, the relationship between the court and the probationer is contractual in nature[.]").

[13] *Id*.

[14] 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). In *Marin*, we summarized:

> Thus, our system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. In the present context, the most important thing to remember about the Texas law of procedural default is that it only applies to the last category.

condition of community supervision that is unauthorized must be raised in the trial court as a predicate to appellate relief. *Hernandez* was decided a number of years before *Speth*, and the issue of procedural default was not expressly addressed there, much less decided; under these circumstances, the State insists, *Speth* should control.

Second, and in any event, the State continues, the appellant should be estopped from complaining of the unauthorized condition on appeal. Because community supervision is a contractual relationship, a prospective probationer may agree to abide by an unauthorized condition "by entering into the contractual relationship without objection[.]"[15] When the probationer reaps the benefits of that contractual relationship, he should be estopped from subsequently complaining about the unauthorized condition on appeal, under *Rhodes v. State*.[16] The *Rhodes* doctrine of estoppel by contract should apply, the State argues, even though the trial court was absolutely prohibited by the Supremacy Clause from imposing a condition impinging upon the federal government's deportation-decision prerogative.

## ANALYSIS

### *Hernandez v. State*: Deportation and Banishment

In *Hernandez*, the appellant's felony probation was revoked for a violation of the

---

*Id*.

[15] *Speth II, supra*, at 534.

[16] *See* 240 S.W.3d 882, 891 (Tex. Crim. App. 2007) (discussing estoppel by contract).

condition that he remain in Mexico and "not re-enter the U.S.A. legally or illegally without prior written permission of" the trial court.[17]  This Court accepted as accurate the State's assertion that Hernandez actually *left* the country for Mexico of his own volition and turned to the question whether the condition that he remain there and return to the United States, legally or illegally, only with permission of the convicting court was an invasion of the exclusive authority of the federal government to regulate immigration.[18]  Observing that "there are areas of law relating to the activities of aliens in which the states are not wholly preempted by federal law," we held that "the matter of entry into the United States is not such an area[,]" and declared that the conditions of Hernandez's probation were incapable of supporting revocation.[19]  Although *Hernandez* does not speak explicitly to the question whether a state agent may order the deportation of an alien, there can be little doubt that for a state-court judge unilaterally to do so "violates the principle that the removal process is entrusted to the discretion of the Federal Government[,]" and that "[d]ecisions of this nature touch on foreign relations" and cannot constitutionally be made by individual state agencies because they "must be made with one voice."[20]  The State accordingly concedes that the

---

[17] *Hernandez*, *supra*, at 288 (opinion on original submission).

[18] *Id*. at 289 (opinion on State's motion for reh'g).

[19] *Id*. at 290.  For this proposition we relied principally upon *Takahashi v. Fish & Game Comm'n.*, 334 U.S. 410, 419 (1948) and *Hines v. Davidowitz*, 312 U.S. 52, 62-63 (1941).

[20] *Arizona v. United States*, 132 S.Ct. 2492, 2506-07 (2012).

convicting court in this case lacked authority to order the appellant out of the country.

If Hernandez made any objection to the invalid conditions of probation at the trial court level, our opinions on original submission and rehearing in *Hernandez* failed to mention it. *Hernandez* preceded *Marin* by a dozen years. It is therefore understandable that we made no explicit determination whether a complaint about purported state action that is preempted by federal law under the Supremacy Clause of the United States Constitution may be forfeited by inaction, may be expressly waived, or instead implicates a systemic requirement or prohibition, not optional with the parties, that may be vindicated on appeal even absent a trial objection or in the face of an express waiver.[21]

In a concurring opinion on rehearing in *Hernandez*, Judge Roberts asserted that the conditions of probation also violated Article I, Section 20, of the Texas Constitution.[22] This provision expressly and unequivocally prohibits the banishment of criminal offenders from the State.[23] In a concurring opinion in an earlier case, Judge Roberts had similarly argued that a condition of probation that required the probationer to return to Mexico and remain

---

[21] *See Marin*, *supra*, at 278-79 (distinguishing appellate claims that are forfeitable, waiver-only, and those which are "not optional and cannot, therefore, be waived or forfeited by the parties").

[22] *Hernandez*, *supra*, 290 (Roberts, J., concurring).

[23] *See* TEX. CONST. art. I, § 20 ("No person shall be transported out of the State for any offense committed within the same.").

there "literally requires transportation" and "is a plain violation of the Texas Constitution."[24]

Like the majority in *Hernandez*, however, Judge Roberts never expressed an opinion whether such a plain violation could be vindicated on appeal absent a timely objection in the trial court. The State now asserts, however, that we later determined in *Speth* that *any* complaint about a condition of community supervision is subject to procedural default, whatever the asserted basis for its invalidity. Although we concede that *Speth* is susceptible to this categorical interpretation,[25] we reject that reading of the opinion today.

## *Speth v. State*: Procedural Default?

Speth was convicted of the offense of aggravated assault of a peace officer and placed on deferred-adjudication probation.[26] He was later charged with the offense of indecency with a child.[27] Although a jury acquitted Speth of the indecency charge, the trial court nevertheless proceeded to adjudicate him guilty of the aggravated assault offense based on the facts proffered by the State to support the indecency charge, and placed Speth on regular probation.[28] As a condition of that regular probation, Speth was required, *inter alia*, to

---

[24]
*Reza v. State*, 608 S.W.2d 688, 690 (Tex. Crim. App. 1980) (Roberts, J., concurring).

[25]
*See* note 7, *ante*.

[26]
*Speth I*, *supra*, at 14; *Speth II*, *supra*, at 531.

[27]
*Speth I*, *supra*, at 14; *Speth II*, *supra*, at 531.

[28]
*Speth I*, *supra*, at 14-15; *Speth II*, *supra*, at 531.

register as a sex offender, submit to and pay for polygraph testing, pay for counseling for the

victims of the alleged indecency offense, and refrain from contact with minor girls for the

duration of his probationary period.[29] Speth challenged these conditions as, *inter alia*,

unauthorized in view of the jury's verdict acquitting him of the indecency charge.[30]

Although Speth had not objected to these conditions in the trial court, the court of appeals

held each of them to be invalid.[31]

In its petition for discretionary review, the State argued that Speth had procedurally

defaulted his complaints for appellate purposes by failing to assert them in the trial court.[32]

Speth countered by invoking a line of cases in which this Court has held that a punishment

that is not authorized by law may be challenged at any time, including for the first time on

direct appeal.[33] We found this line of cases, however, to be "inapposite."[34] First, we pointed

---

[29]

*Speth I*, *supra*, at 15; *Speth II*, *supra*, at 531 n.1.

[30]

*Speth II*, *supra*, at 531.

[31]

*Speth I*, *supra*, at 18; *Speth II*, *supra*, at 531.

[32]

*Speth II*, *supra*, at 531.

[33]

*Id*. Speth had cited: *Heath v. State*, 817 S.W.2d 335-336 (Tex. Crim. App. 1991) (opinion on original submission); *Hern v. State*, 892 S.W.2d 894, 896 (Tex. Crim. App. 1994); *Ex parte Johnson*, 697 S.W.2d 605, 606-07 (Tex. Crim. App. 1985); and *Wilson v. State*, 677 S.W.2d 518, 524 (Tex. Crim. App. 1984). *See also Ex parte Rich*, 194 S.W.3d 508, 511 & n.3 (Tex. Crim. App. 2006) (claim that sentence is void may be raised at any time, including in post-conviction habeas proceedings); *Mizell v. State*, 119 S.W.3d 804, 806 & n.6 (Tex. Crim. App. 2003) ("A trial or appellate court which otherwise has jurisdiction over a criminal conviction may always notice and correct an illegal sentence. * * * There has never been anything in Texas law that prevented *any* court

out that community supervision is "not a sentence or even a part of a sentence."[35] But more critically, we observed that the requirement that a defendant be sentenced within the statutorily applicable range of punishment is an "absolute and nonwaivable" feature of the system within the *Marin* rubric, the contravention of which can be raised at any time.[36] By contrast, the decision whether to grant an eligible defendant probation is highly discretionary, as is the judicial determination of what conditions of probation "may" be imposed as appropriate "to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant."[37] Within this broadly discretionary scheme, we explained, the assessment of a particular condition of community supervision will not ordinarily implicate an absolute feature of the system, not optional with the parties, in the same way that a sentence that is manifestly outside the statutorily applicable range of punishment does.[38]

---

with jurisdiction over a criminal case from noticing and correcting an illegal sentence.").

[34] *Speth II*, *supra*, at 532.

[35] *Id*.

[36] *Id*. at 532-33 & n.5.

[37] *Id*. at 533 (citing TEX. CODE CRIM. PROC. art. 42.12, § 11(a)).

[38] *See Id*. at 534 ("Because Section 11 [of Article 42.12] is so broadly discretionary, it does not establish a narrowly identifiable 'universe of punishments applicable to the offense' in the same manner as the statutory sentencing schemes at issue" in the line of cases that Speth invoked) (quoting *Ex parte Johnson*, *supra*, at 607) .

We are not inclined to read *Speth* so categorically as to hold that a defendant may not complain for the first time on appeal of a condition of probation which violates an absolute prohibition as envisioned by *Marin*. This is not to say that a defendant will not forfeit many, if not most, appellate complaints—even most constitutional complaints—about particular conditions of community supervision by failing to object at trial, or that he will not effectively waive any constitutional or statutory waiver-only right that might be violated by a condition of community supervision he has agreed to follow in his contractual relationship with the trial court.[39] But he cannot agree to submit to a condition of community supervision that the criminal justice system simply finds intolerable and which is therefore, by definition, not even an option available to the parties.

That is implicitly what we held the condition of probation in *Hernandez* to be—so antithetical to the aims of the justice system as a whole as to be intolerable, and therefore, not subject to agreement by the parties. The trial court in this case clearly lacked the authority to order the appellant to leave the country in derogation of the federal preemption over

---

[39] *See*, *e.g.*, *Belt v. State*, 127 S.W.3d 277, 282 (Tex. App.—Fort Worth 2004, no pet.) (court of appeals refused to reach the merits of due-process challenge to particular conditions of community supervision because not raised below, though it *did* reach the merits of non-constitutional challenges that the appellant *had* properly preserved by trial objection); *Hart v. State*, 264 S.W.3d 364, 368 (Tex. App.—Eastland 2008, pet. ref'd) (complaint that condition of community supervision encroached upon the appellant's constitutional right to free exercise of religion not preserved for appeal); *Little v. State*, ___ S.W.3d ___, 2012 WL 3030565, at * 6-11 (Tex. App.—Fort Worth, delivered July 26, 2012) (due process challenge to supplemental condition of community supervision not preserved for appeal when the appellant failed to complain about it for the three years preceding State's motion to revoke).

matters involving deportation.[40] Moreover, as Judge Roberts has pointed out, for the trial court to do so violated the constitutional stricture—expressed by Article I, Section 20, of the Texas Constitution, not in terms of a forfeitable or waiver-only right of a litigant, but as a flat prohibition—against banishment as an acceptable punishment for the commission of a crime. In short, a state trial court may no more order a convicted defendant to leave the State than

---

[40]

Relying upon our opinion in *Ex parte Medellin*, 223 S.W.3d 315, 330-31 (Tex. Crim. App. 2006), the State asserts that "this Court has recently held that at least one Supremacy Clause-based claim does not involve absolute or nonwaivable rights and is subject to the rules of procedural default." State's Brief at 15. If by this the State means to suggest that a claim raised for the first time on appeal should not necessarily be regarded as "involving" a systemic requirement or prohibition simply because the federal constitutional right it invokes has been declared applicable to the states through the Supremacy Clause, then we readily agree. As we have already observed, most federal constitutional rights are in fact subject to either waiver or forfeiture. *See* note 39, *ante*. That an appellate claim has its roots in the federal constitution does not alone determine its status under the *Marin* categories. But by the same token, we have not held, in *Medellin* or in any other opinion, that a claim raised for the first time on appeal may *never* be regarded as invoking a systemic requirement or prohibition under *Marin* when it is based on the Supremacy Clause.

In any event, *Medellin* itself is inapposite. Medellin claimed that for Texas to apply its statutory abuse-of-the-writ doctrine to prevent him from claiming, for the first time in a successive post-conviction application for writ of habeas corpus, that his rights under the Vienna Convention on Consular Relations had been violated would itself violate the International Court of Justice's (ICJ) construction of that treaty—a construction that he argued was binding on Texas by virtue of the Supremacy Clause. *Medellin*, *supra*, at 330. Following the lead of the United States Supreme Court, however, we held that the ICJ's construction of the treaty was *not* binding on the United States, and that the Supreme Court's own construction of the Vienna Convention would allow a signatory state to apply its doctrines of procedural default in assessing the validity of a claimed violation of consular rights under the terms of the treaty. *Id*. at 332 (citing *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 355-57 (2006)). In short, we did not hold in *Medellin* that a "Supremacy Clause-based claim" may be forfeited. Rather, we held that Medellin was mistaken to assert that the Supremacy Clause was even implicated, given that the ICJ's interpretation of the treaty did not control, and that Texas was therefore free to exercise its statutory abuse of the writ doctrine, notwithstanding the ICJ's ruling. *See Medellin v. Texas*, 552 U.S. 491, 504-06 (2008) ("not all international law obligations automatically constitute binding federal law enforceable in United States courts" by virtue of the Supremacy Clause, and terms of the Vienna Convention as construed by the ICJ were not domestically enforceable in the absence of a self-executing treaty or legislative implementation).

it may punish him with a sentence that is beyond the statutorily applicable range of punishment. Although we rejected the comparison to the illegal-sentence line of cases with respect to the particular conditions of probation that were in issue in *Speth*, we think it is an apt enough analogy in the context of a condition of community supervision that both invades a federal prerogative, in violation of the Supremacy Clause, and violates an explicit and unqualified state constitutional prohibition. We now expressly hold what *Hernandez* merely implied, namely, that a condition of community supervision that effectively operates to deport a probationer violates an absolute prohibition and is therefore not subject to ordinary principles of waiver or procedural default.

### *Rhodes v. State*: Estoppel?

Even if *Hernandez* identified an absolute prohibition within the rubric of *Marin*, the State argues, it should make no difference to our disposition of the appellant's case. The basis for this argument derives from this Court's recognition, in *Saldano v. State*, that under some circumstances, the doctrine of estoppel can trump even *Marin*'s category of non-forfeitable/non-waiveable absolute requirements or prohibitions.[41] And in *Rhodes v. State*, we identified two species of estoppel that we described as "close cousins" of one another:

---

[41] 70 S.W.3d at 888 & n.69 ("We have held that a party may be estopped from relying on an absolute requirement.") (citing *Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999) and *State v. Yount*, 853 S.W.2d 6 (Tex. Crim. App. 1993)).

estoppel by judgment, and estoppel by contract.[42]  These types of estoppel, we observed, would apply to nullify any kind of systemic breakdown except for a lack of subject matter jurisdiction.[43]  We ultimately held in *Rhodes* that "[a] defendant who has enjoyed the benefits of an agreed judgment prescribing a too-lenient punishment should not be permitted to collaterally attack that judgment on a later date on the basis of the illegal leniency."[44]  The State now argues that, because the trial court had subject matter jurisdiction to place the appellant on community supervision, and the appellant enjoyed the benefit of her contract with the trial court to place her on community supervision in exchange for her promise to abide by prescribed conditions, the appellant should now be estopped from complaining of a particular condition.

We do not think that either estoppel doctrine is applicable here.  With respect to estoppel by contract, that doctrine does not apply when the relevant terms of the contract are unenforceable on grounds of public policy.

> An important exception to the rule [of estoppel by contract] that is usually recognized is that, where the contract is void as against public policy or against an express mandate of the law, a person who has accepted a benefit thereunder will not be estopped from defending against the contract when it is sought to

---

[42] *Rhodes*, *supra*, at 891.

[43] *Id*.

[44] *Id*. at 892.

be enforced against him or her.[45]

Looking to the Restatement (Second) of Contracts, in *State v. Williams*, this Court acknowledged that "[e]nforcement of some contracts may be precluded on the ground of public policy."[46] The particular Restatement (Second) provision we invoked in *Williams* reads:

> (1) A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.
>
> (2) In weighing the interest in the enforcement of a term, account is taken of
>
> > (a) the parties' justified expectations,
> >
> > (b) any forfeiture that would result if enforcement were denied, and
> >
> > (c) any special public interest in the enforcement of the particular term.
>
> (3) In weighing a public policy against enforcement of a term, account is taken of
>
> > (a) the strength of that policy as manifested by legislation or judicial decisions,
> >
> > (b) the likelihood that a refusal to enforce the term will further that policy,

---

[45] 31 C.J.S. Estoppel and Waiver § 164, at 544 (2008).

[46] *State v. Williams*, 938 S.W.2d 456, 460 (Tex. Crim. App. 1997).

(c) the seriousness of any misconduct involved and the extent to which it was deliberate, and

(d) the directness of the connection between that misconduct and the term.[47]

Applying these criteria, it is apparent to us that any agreement that the appellant may have reached with the trial court with respect to her deportation was unenforceable, and therefore not subject to estoppel by contract.

Considering first the factors that might favor enforcement, we perceive no justifiable expectations of enforcement by either the State or the trial court, no forfeiture that either the State or the trial court would suffer on account of the failure to enforce it, and no special public interest to be served by its enforcement. By contrast, at least three of the four criteria militating against enforcement are clearly present. The strength of the policy against enforcement is profound, deriving as it does both from an overriding federal constitutional interest in maintaining centralized control over all matters involving deportation and an unequivocal state constitutional prohibition against banishment as an acceptable response to crime.[48] Refusal to enforce the condition clearly furthers these respective federal and state policies. And while we have no doubt that the trial court did not deliberately set out to

---

[47] Restatement (Second) of Contracts § 178 (1981).

[48] Under Section 178, subsection 3(a), "'legislation' is used . . . in the broadest sense to include any fixed text enacted by a body with authority to promulgate rules, including not only statutes, but constitutions . . . ." *See id*, Comment (a).

fashion a condition of community supervision that would violate these federal and state constitutional imperatives, the connection between the offending condition and the federal and state constitutional violations is undeniably direct. On balance, we do not think estoppel by contract should apply.

As for estoppel by judgment, in addition to the above public-policy considerations, we note that appellate courts in Texas have consistently held that, before that doctrine may apply, an appellant's acceptance of the benefits of the judgment must be voluntary.[49] In our view, the appellant's acceptance of the trial court's *ultra vires* condition of community supervision was not wholly voluntary. Counsel for the appellant informed the trial court at the revocation hearing that the appellant and her husband provided the sole financial support

---

[49] The general rule in Texas, "based on the principle of estoppel[,]" is that if an appellant "has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom." *Carle v. Carle*, 149 Tex. 469, 472, 234 S.W.2d 1002, 1004 (Tex. 1950). But "[a]cceptance of benefits due to financial duress has been held not to constitute voluntary acceptance and is, therefore, an exception to the rule applied in *Carle*." *Haggard v. Haggard*, 550 S.W.2d 374, 376 (Tex. Civ. App.—Dallas 1977, no writ) (citing, *inter alia*, *Cherokee Nation v. United States*, 174 Ct. Cl. 131, 139, 355 F.2d 945, 949 (Ct. Cl. 1966), in which acceptance of reduced award of attorney's fees in court's judgment, where attorneys had incurred debilitating financial burden on account of the representation, did not block appellate effort to restore originally-agreed-upon fees). *See also Smith v. Texas Commerce Bank - Corpus Christi, N.A.*, 822 S.W.2d 812, 814 (Tex. App.—Corpus Christi 1992, writ denied) ("If economic circumstances compel a party to accept benefits, there is no voluntary acceptance or acquiescence in the judgment, and the estoppel doctrine does not apply."); *Rogers v. Rogers*, 806 S.W.2d 886, 889 (Tex. App.—Corpus Christi 1991, no writ) ("The general rule is that a party may not voluntarily accept the benefits of a judgment and attack it on appeal at the same time. * * * There are, however, exceptions to this rule. For example, if economic circumstances compel a party to accept benefits, there is no voluntary acceptance or acquiescence in the judgment, and the estoppel doctrine does not apply."); *McCartney v. Mead*, 541 S.W.2d 202, 205 (Tex. Civ. App.—Houston [1st. Dist.] 1976, no writ) ("An exception [to estoppel by judgment] may also exist where financial duress compels an involuntary acceptance of the judgment's benefits.").

for their four children, two of whom "have special needs" relating to Down's syndrome. Obviously, she had every incentive to accept any contingency that would rule out her having to serve penitentiary time. Judge Womack has pointed out that "[p]robation may be imposed on a defendant who does not wish it[.]"[50] What is more, a defendant ordinarily has no say in the trial court's decision regarding the appropriate conditions of community supervision. What those conditions will be is not a product of negotiation; a defendant in the appellant's shoes must simply take them or leave them if she wants to avoid incarceration. Under these circumstances, we do not think that the appellant's acquiescence to the condition of community supervision that she leave the country constitutes an "acceptance" sufficient to trigger the doctrine of estoppel by judgment.

## CONCLUSION

For these reasons, we affirm the judgment of the court of appeals.

DELIVERED:       October 10, 2012
PUBLISH

---

[50] *Speth II*, *supra*, at 536 (Womack, J., concurring) (citing *Roberson v. State*, 852 S.W.2d 508, 512 (Tex. Crim. App. 1993)); *Rickels v. State*, 108 S.W.3d 900, 903 (Tex. Crim. App. 2003) (Womack, J., concurring). *See also Ivey v. State*, 277 S.W.3d 43, 52 n.52 (Tex. Crim. App. 2009) (trial court may impose community supervision, where statutorily authorized to do so, even though defendant had elected to go to jury for punishment, jury did not recommend it, and defendant was not "desirous" of it).