# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00705-CR

**Phillip Joel Ramos, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-03-727, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Phillip Ramos pleaded guilty to the crime of attempted sexual performance by a child, and pursuant to a plea-bargain agreement, he was placed on community supervision. Subsequent to his conviction, the State alleged that Ramos had violated the terms of his community supervision in several ways and moved to revoke his community supervision. After conducting a hearing, the district court revoked Ramos's community supervision, and Ramos appeals the district court's judgment. We will affirm the district court's judgment revoking his community supervision.

## BACKGROUND

In 2004, Ramos pleaded guilty to the crime of attempted sexual performance by a child. *See* Tex. Penal Code Ann. §§ 15.01 (setting out circumstances in which person is guilty of attempt), 43.25(b) (West 2011) (defining offense of sexual performance by child). After Ramos pleaded guilty, the district court imposed a sentence of imprisonment for ten years but placed him

on community supervision. One of the terms of Ramos's community supervision required him to "[a]void the use of any sexually provocative materials." In addition to that requirement, Ramos was also obligated to perform community service, pay court costs, and make monthly payments for child support, a fine, community-supervision fees, and sexual-assault-program fees.

Approximately six years after Ramos pleaded guilty, he sent a text message to his ex-wife, Christina Finley, containing a picture depicting a naked woman straddled over a man's erect penis with feces on the woman's buttocks. After receiving the text, Finley reported the exchange to Ramos's probation officer, Brittany Martinez, and also e-mailed Martinez a copy of the image.

Subsequent to Martinez being notified about the picture, the State moved to revoke Ramos's community supervision, and the district court scheduled a hearing. In addition to alleging that Ramos violated the terms of his community supervision by possessing and sending the photograph, the State claimed that Ramos failed to pay his court costs, failed to perform his community-service obligations, and failed to make monthly payments for his fine, his community-supervision fees, his child-support obligation, and his sexual-assault-program fees. During the hearing, various witnesses were called to the stand. After hearing the testimony of the witnesses and arguments from both sides, the district court found that Ramos had violated the conditions of his community supervision and revoked his community supervision.

Ramos appeals the district court's judgment revoking his community supervision.

## DISCUSSION

In his appeal, Ramos raises two issues. First, he argues that the term of his community supervision prohibiting him from using any sexually provocative materials is improper. Second, he

2

contends that the district court erred by revoking his community supervision because his inadvertent transmission of the picture to his ex-wife did not constitute an intentional violation of his community supervision and because the State failed to prove any other violation.

*Challenge to Term of Community Supervision was Not Preserved for Appeal*

As mentioned above, Ramos challenges the propriety of one of the terms of his community supervision. That term required Ramos to "avoid the use of any sexually provocative materials including but not limited to: written material (i.e., books, magazines), video materials (i.e., movies, cable television channels, etc.), satellite transmissions, internet or other computer information." In his appeal, Ramos insists that the requirement listed above is too vague and ambiguous to be enforced.

Placement on community supervision "is a *privilege*, not a right," and a trial court's decision to bestow the benefit onto a defendant "is wholly discretionary and nonreviewable." *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999); *see also id.* at 533 (stating that trial courts also have broad discretion when determining conditions of community supervision); Tex. Code Crim. Proc. Ann. art. 42.12 § 11(a) (West Supp. 2012) (explaining that trial court "may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant"). In fact, when a trial court orders placement on community supervision, the court and the defendant essentially create a type of contractual arrangement under which the trial court agrees to extend clemency provided that the defendant complies with certain requirements. *Flournoy v. State*, 589 S.W.2d 705, 707 (Tex. Crim. App. 1979). Accordingly, the conditions of community supervision are the "terms of the contract entered into

3

between the trial court and the defendant." *Speth*, 6 S.W.3d at 534. "A defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial to conditions that he finds objectionable." *Id.* If a defendant does not object to a condition of community supervision at the trial court, he "affirmatively waives any rights encroached upon by the terms of the contract." *Id.*; *see* Tex. R. App. P. 33.1(a) (requiring defendant to make timely and specific objection to preserve issue for appeal); *see also Gutierrez v. State*, 380 S.W.3d 167, 175 (Tex. Crim. App. 2012) (recognizing that defendants waive "many, if not most, appellate complaints–-even most constitutional complaints—about particular conditions of community supervision by failing to object at trial" but also stating that defendant cannot agree to submit to condition that justice system finds intolerable).

Ramos does not assert and the record does not show that any objection to the terms of his community supervision was made to the district court. Accordingly, Ramos waived any right to challenge the term of his community supervision instructing him to avoid the use of any sexually provocative materials. *Cf. Hart v. State,* 264 S.W.3d 364, 368 (Tex. App.—Eastland 2008, pet. ref'd) (determining that complaint that condition violated appellant's constitutional right to free exercise of religion not preserved for appeal); *Belt v. State*, 127 S.W.3d 277, 282 (Tex. App.—Fort Worth 2004, no pet.) (concluding that defendant did not preserve due-process complaints because he did not present to trial court due-process objection regarding terms of community supervision). Therefore, we overrule his first issue on appeal.

*District Court Did Not Abuse its Discretion by Revoking Community Supervision*

In his second issue on appeal, Ramos insists that his transmission of the picture to his ex-wife did not constitute an intentional violation of the terms of his community supervision. As

4

support for this assertion, Ramos notes that all three of the witnesses that testified during the hearing stated that Ramos had told them that he did not intend to send the picture to his ex-wife. In addition, Ramos also points to testimony regarding a polygraph that he took that indicated that he was being truthful when he denied intentionally sending the photo to his ex-wife. Moreover, Ramos contends that the testimony presented during the hearing does not support revocation on any of the other grounds alleged by the State.

During a revocation proceeding, the State has the burden of establishing the alleged violations by a preponderance of the evidence. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). That burden is satisfied if the greater weight of the credible evidence creates a reasonable belief that a violation occurred. *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006). In deciding whether the allegations are true, "the trial court is the sole trier of facts, and the judge of the credibility of the witnesses and the weight to be given the testimony." *Becker v. State*, 33 S.W.3d 64, 66 (Tex. App.—El Paso 2000, no pet.). A trial court has wide discretion when determining whether to "modify, revoke, or continue the probation" when considering a motion to revoke. *Ex parte Tarver*, 725 S.W.2d 195, 200 (Tex. Crim. App. 1986); *Hart*, 264 S.W.3d at 372; *see* Tex. Code Crim. Proc. Ann. art. 42.12, § 21(b) (West Supp. 2012) (explaining that "[a]t any time during the period of community supervision the judge may issue a warrant for violation of any of the conditions of the community supervision and cause the defendant to be arrested").

In light of this broad discretion, we review a trial court's decision to revoke under an abuse-of-discretion standard of review. *Rickels*, 202 S.W.3d at 763. Under that standard, an abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside the

5

zone within which reasonable minds might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). In reviewing the trial court's decision, we view the evidence in the light most favorable to the ruling and defer to the trial court's assessment of the witnesses' credibility and the weight to give to their testimony. *Mauney v. State*, 107 S.W.3d 693, 695 (Tex. App.—Austin 2003, no pet.). If more than one violation is alleged and found by the trial court, the trial court's decision to revoke will be upheld if the evidence is sufficient for any of the alleged grounds. *Dunavin v. State*, 611 S.W.2d 91, 101 (Tex. Crim. App. 1981).

During the revocation hearing, three witnesses testified: Martinez; Rosalinda Vazquez, who was also a probation officer for Ramos; and Scott Siegel, who was Ramos's sex-offender-treatment provider. In challenging the revocation, Ramos correctly points out that all three of the witnesses testified that Ramos did not intend to send the photo to his ex-wife. In fact, Martinez also testified that after she confronted Ramos about the picture, he said "that he sent it by mistake after a friend of his brother's sent the picture to him. He explained that he tried to delete it, and instead of deleting it, he forwarded it to his ex-wife." In addition, Martinez testified that Ramos insisted that he had only had his phone for three months and did not know how to use it.

Although the other two witnesses did testify that Ramos explained to them that he did not intend to send the photo to his ex-wife and did mention that Ramos's polygraph results were consistent with that proposition, they also provided testimony indicating that Ramos intended a use of the photo. Specifically, Vasquez testified that when she asked Ramos how he obtained the picture, Ramos told her that he was discussing "inappropriate pictures" with one of his cousins and that he told his cousin that he had a picture that he intended to send to a "particular person" but that

6

he accidentally sent it to his ex-wife instead. Later, Vasquez clarified that Ramos told her that someone had texted him a copy of the image and that he intended to forward it to someone else. In her testimony, she also related that she did not remember Ramos ever mentioning that he had inadvertently sent the image while trying to delete it.

Once Vasquez concluded her testimony, Siegel was called to the stand. In his testimony, Siegel related that Ramos claimed that he and his friends try "to gross each other out, and that was the—the origin of this picture was that it was—there was nothing sexual about it. It was more disgusting." When describing how Ramos obtained the picture, Siegel testified that Ramos stated that a friend "sent him the text" and that he decided "to forward it to another person . . . in an effort to . . . gross him out." During his testimony, Siegel was asked if Ramos had stated that he had originally intended to delete the image before texting it, and Siegel answered, "I don't remember him saying that he was about to delete it." When describing the polygraph results, Siegel explained that Ramos was only asked whether he intended to send the image to his ex-wife and agreed that Ramos was not asked to answer whether he intentionally possessed the image.

Although Siegel testified that nothing in Ramos's history indicated that the photo would be arousing to him, Siegel did admit that the image might be sexually provocative for some people. That sentiment was echoed in Martinez's testimony when she described the photo as "pretty graphic and sexual in nature" and stated that the picture was sexually provocative. Moreover, Siegel testified that he did not believe that it was appropriate for Ramos to possess that kind of image, to discuss it with others, or to send it to others given the type of offense that Ramos had committed in the past.

In light of the preceding, we cannot conclude that the district court abused its discretion by determining that Ramos violated the terms of his community supervision by using sexually provocative materials. Given that a single violation can support a revocation order, we need not address the evidence pertaining to the other alleged violations. Accordingly, we overrule Ramos's second issue on appeal.

## CONCLUSION

Having overruled Ramos's two issues on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   May 2, 2013

Do Not Publish