

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00033-CR

LAWRENCE DONOVAN                                                                   APPELLANT

V.

THE STATE OF TEXAS                                                                        STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## DISSENTING OPINION ON EN BANC RECONSIDERATION

----------

Respectfully, I cannot agree with the majority's conclusion that "despite his being well represented by counsel and having multiple opportunities to do so[,] . . . Appellant has forfeited his claims for review."[1] The majority does not explain how Appellant could object when his lawyer did not. Although our state's constitution guarantees that "[i]n all criminal prosecutions the accused . . . shall have

---

[1]Majority Op. at 13.

the right of being heard by himself or counsel, or both. . . ,"[2] the courts of this state have repeatedly held that a defendant has no right to his voice's being heard if he is represented by counsel.[3] Either Appellant was represented by counsel when the conditions of community supervision were amended, in which case he had no recognized right, aside from the constitutional right which has been abrogated by the courts, to be heard, or he was denied his right to be represented by counsel at this significant stage in his prosecution.

Nor does the majority explain how Appellant could know that Michael Strain, who is neither a judge nor a community supervision officer, would have the power to create conditions of community supervision that were never ordered by the trial court except by general delegation. Appellant argues that the trial court abused its discretion by revoking his community supervision. I would hold that Appellant is correct.

Appellant was charged by indictment with one count of aggravated sexual assault of a child under seventeen years of age and one count of indecency with a child by contact. The indictment was amended by interlineation to add a third count of bodily injury to a child. Appellant entered his plea of nolo contendere to count three of the indictment pursuant to a plea agreement, and the trial court explicitly acquitted Appellant of the two sexual offenses. The trial court placed Appellant on

---

[2]Tex. Const. art. I, § 10.

[3]*See, e.g.*, *Ex parte Medina*, 361 S.W.3d 633, 637 (Tex. Crim. App. 2011).

2

deferred adjudication community supervision for five years. The trial court also entered an order expunging the records pertaining to the two sexual offenses. There is no record of any opposition by the State to the expunction order. The expunction order itself, however, was inexplicably destroyed.

Subsequently, the trial judge was defeated for reelection, and the new trial judge amended the conditions of Appellant's community supervision to include a requirement that Appellant serve time in jail as a condition of community supervision and that he complete sex offender treatment. The record reflects no grounds for the amendment that had not been before the prior trial judge. Nor does the record reflect whether the amendment was ordered in court or in the community supervision office, whether Appellant was informed that he could object to the amendment or seek advice of counsel, or whether he was represented by counsel when the new trial judge amended the conditions of community supervision.

A timeline is necessary to fully understand the issues of forfeiture and preservation:

| | |
|---|---|
| August 23, 2006 | Appellant was acquitted of sexual offenses, convicted of injury to a child, placed on deferred adjudication community supervision for five years, and served with conditions of community supervision. He was not placed on the sex offender caseload. At some point, by agreement with the district attorney's office, an expunction order was entered regarding the sex offenses. |
| August 25, 2006 | The trial court modified conditions of community supervision from "Do not use, possess, or consume any alcoholic beverage" to "No excessive consumption of any alcoholic beverage." |

3

| | |
|---|---|
| March 24, 2008 | The new trial judge extended community supervision for one year and modified conditions of community supervision to "Do not use, possess or consume any alcoholic beverage. Do not refuse a breath, blood, urine or field sobriety test as requested by a peace officer or supervision officer." |
| March 24, 2008 | The new trial judge amended community supervision conditions to place Appellant on the sex offender caseload and to require him to comply with all terms and conditions of the sex offender caseload except registration as a sex offender. |
| November 17, 2008 | The new trial judge amended conditions of community supervision to require "Confinement TCJ as COP 16 days begins Nov. 21, 2008 Fridays by 9 pm and out Mondays by 5 am." |
| December 1, 2008 | The new trial judge amended conditions of community supervision to change the dates of work-release, which she had imposed on November 17, 2008. |
| February 2, 2009 | Appellant's attorney filed "DEFENDANT'S MOTION FOR MODIFICATION OF CONDITIONS OF PROBATION." Appellant's motion states that "the only reason his conditions of probation were amended to require successful completion of the sex offender treatment program was because of Judge Westfall's concern over the Community Supervision Community Development's report to her that [Appellant] had originally been charged with sex offenses—the same offenses for which he had been found not guilty, and for which the Tarrant County District Clerk's Office records were expunged." This statement was never controverted by the State. |
| August 24, 2009 | En camera meeting with lawyers occurred. |

4

| October 20, 2010 | The State filed its "FIRST PETITION TO PROCEED TO ADJUDICATION." The trial court issued an alias capias for the arrest of Appellant and ordered him held without bond. |
| --- | --- |
| October 26, 2010 | Appellant's attorney entered a notice of representation. The trial court set bond and imposed conditions. |
| November 3, 2010 | The warrant for Appellant's arrest was executed. |
| January 7, 2011 | The hearing on the State's motion to proceed to adjudication began. |
| January 18, 2011 | The trial court granted the State's motion, adjudicated Appellant's guilt, and imposed a four-year sentence. |

Appellant participated in the sex offender treatment program until he was required to discuss the facts of the two offenses of which he had been acquitted. Michael Strain had been given a copy of the offense report containing descriptions of the expunged offenses as well as descriptions of the offense of which Appellant had been convicted. When Strain told Appellant that he would have to discuss the facts of the allegations upon which the expunged offenses were based, Appellant told Strain that it was illegal for him to comply with Strain's requirement. The majority does not address this issue, holding, instead, that Appellant did not object. Although his lawyer did not object until he had opportunity, Appellant clearly objected when he told Strain that he could not comply with Strain's directive. Appellant was not in court, and there is no showing that he was aware of the proper procedure for complaining about a condition of community supervision or that he

knew the proper vehicle for lodging a legally valid objection. But Appellant was correct when he told Strain that it was illegal for him to discuss expunged cases.

Article 55.03 of the Texas Code of Criminal Procedure provides,

When the order of expunction is final:

(1) the release, maintenance, dissemination, or use of the expunged records and files for any purpose is prohibited;

(2) except as provided in Subdivision (3) of this article, the person arrested may deny the occurrence of the arrest and the existence of the expunction order; and

(3) the person arrested or any other person, when questioned under oath in a criminal proceeding about an arrest for which the records have been expunged, may state only that the matter in question has been expunged.[4]

As the majority acknowledges,

Strain's recollection of the trial court's instructions was that Appellant was not required to admit responsibility for the original charged offenses but not that it would be illegal to discuss them. He told Appellant that if it was illegal to discuss the sexual nature of the original charges, he was uncertain whether any useful treatment work could be done, and pending some clarification of the matter, he discontinued Appellant's treatment.[5]

That is, Appellant did not abandon Strain's program. Strain abandoned him because Appellant understood article 55.03 to mean that dissemination of the facts and allegations contained in the expunged records was prohibited. The trial court did not explain to Appellant how the statute did not apply to him. Other

_____

[4]Tex. Code Crim. Proc. Ann. art. 55.03 (West 2006).

[5]Majority op. at 4.

6

requirements of the sex offender caseload included detailed discussions of Appellant's sexual history, polygraph tests regarding sexual activity, and other admissions regarding "victims."

Like the applicant in *Ex parte Evans*, who was successful on parole for eighteen months before the Texas Department of Criminal Justice unlawfully added sex offender conditions to his conditions of parole,[6] Appellant was doing well on community supervision until the trial court amended his conditions to place him on the sex offender caseload. The new trial judge clearly stated on the record that she did not agree that the expunction should have been granted by the prior trial judge. Her statements included, "So he got an illegal expunction." She also referred to it as a "baseless expunction." She maintained her position, despite the facts that, as pointed out to her, the district attorney's office had agreed to the expunction, and it had not been appealed.

When Appellant was placed on the sex offender caseload, he was apparently in compliance with the conditions of his community supervision. He had a long-standing ministry with the Roman Catholic Church, was a decorated Air Force veteran who had served during the Vietnam War era, and was employed as a nuclear physicist with the United States Nuclear Regulatory Commission. He had earned two masters degrees and had received a bachelor of science and physics

---

[6]338 S.W.3d 545, 546, 553, 556 (Tex. Crim. App. 2011).

degree from Duke University.  As was the case for the applicant in *Ex parte Evans*,[7] Appellant's life quickly went downhill after being placed on the sex-offender caseload.

Due process requires a rational relationship between the offense and the obligations of community supervision.  If restitution is ordered, a defendant may be ordered to pay restitution only to the complainants in the cases of which he was actually convicted.[8]  There must be not only a rational relationship between the offense and the conditions of community supervision but also recognition of the constitutional rights of the probationer.  A probationer cannot be ordered to do an act that violates his constitutional rights as balanced with the goals of community supervision.[9]

The record does not reflect any action by Appellant that justifies the trial court's transferring him to the sex offender caseload.  From the record, the transfer appears to have been ordered because the new trial judge did not agree with the ruling of the former trial judge in acquitting Appellant of the two sex offenses and granting the agreed-upon expunction.

The State argues, and the majority holds, that Appellant should have objected to the amended conditions of community supervision.  But the order provides no

---

[7]*Id.* at 548.

[8]*Martin v. State*, 874 S.W.2d 674, 677 (Tex. Crim. App. 1994).

[9]*Ex parte Dangelo*, 339 S.W.3d 143, 148–49 (Tex. App.—Fort Worth 2010) (*Dangelo I*), *aff'd*, 376 S.W.3d 776 (Tex. Crim. App. 2012) (*Dangelo II*).

notice to Appellant that he would be required to discuss sex offenses of which he had been acquitted as well as possible offenses with which he had never been charged. When Appellant learned that he was expected to admit to those offenses, he objected to Mike Strain. The trial judge did intervene, then, to countermand Strain's requirement that Appellant actually admit to the offenses of which he had been acquitted.

The record does not reflect that Appellant was represented by counsel when the trial court amended his conditions of community supervision or even that the amendment occurred in open court. Nor is there any indication that Appellant was aware either of his ability to object or of what the amendments to his conditions of community supervision entailed. As the Supreme Court of the United States explained in regard to statements made in response to custodial interrogation,

> The abdication of the constitutional privilege—the choice on his part to speak to the police—was not made knowingly or competently because of the failure to apprise him of his rights; the compelling atmosphere of the in-custody interrogation, and not an independent decision on his part, caused the defendant to speak.

> . . . .

> At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent. For those unaware of the privilege, the warning is needed simply to make them aware of it—the threshold requirement for an intelligent decision as to its exercise. More important, such a warning is an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere. It is not just the subnormal or woefully ignorant who succumb to an interrogator's imprecations, whether implied or expressly stated, that the interrogation will continue until a confession is obtained or that silence in the face of accusation is itself damning and will bode ill when

9

presented to a jury.  Further, the warning will show the individual that his interrogators are prepared to recognize his privilege should he choose to exercise it.

The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given.  Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact.  More important, whatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time.

The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court.  This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it.  It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege.  Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest.[10]

A defendant in a criminal case does not lose his right against self-incrimination under either the Constitution of the United States or the Constitution of the State of Texas when he is placed on community supervision.[11]  Yet the trial court granted the State's motion to proceed to adjudication because Appellant refused to discuss underlying facts of the cases of which he had been acquitted and which had

---

[10]*Miranda v. Arizona*, 384 U.S. 436, 465–69, 86 S. Ct. 1602, 1623–25 (1966) (citations omitted).

[11]*Dangelo II*, 376 S.W.3d at 781.

been expunged and refused to discuss sexual activity that might reveal acts for which he could be criminally prosecuted. Essentially, the trial court revoked Appellant's community supervision and proceeded to adjudication of his guilt because he invoked his constitutional right not to provide evidence against himself, resulting in Strain's expelling Appellant from his sex offender program.

On appeal, the State contends that Appellant's treatment program could have been "tailored" to avoid doing violence to the proscriptions regarding an expunged offense. Appellant's counsel has stated repeatedly, both in oral argument and in written argument, that they were

> constantly in [the trial court's] chambers to address the recurring issue as to how Appellant was to deal with a probation department that, in effect, required him to admit a nonexistent sex crime—the very "offense" he had (with the State's consent) been found not guilty of and the subject of an expunction order.
>
> There is no showing in the record that defense counsel were ever made aware by the Court or Probation that Appellant could switch to a provider other than Michael Strain and Associates. That is the "surprise" referred to by defense counsel in the trial court and on appeal. Counsel were never advised that option was available. Had they known, they would have switched providers.[12]

Appellant has suggested that a recent Texas Court of Criminal Appeals opinion is instructive in this case and that we should follow its reasoning. In *Leonard v. State*, the Court of Criminal Appeals reminds us that

> [i]n a revocation proceeding, the trial court has discretion to revoke community supervision when a preponderance of the evidence supports one of the State's allegations that the defendant violated a

---

[12]Appellant's Post-Submission Brief at 4.

condition of his community supervision. Though defendants are not entitled to community supervision as a matter of right, once a defendant is assessed community supervision in lieu of other punishment, this conditional liberty "should not be arbitrarily withdrawn by the court . . . ." On appeal from a trial court's decision to revoke, therefore, appellate courts review the record only to ensure that the trial court did not abuse its discretion.

Upon close examination, however, it is not obvious how an abuse-of-discretion standard applies in this case. The trial court ordered the appellant to "[a]ttend and participate fully in and successfully complete" a program. The evidence at the adjudication hearing showed that the appellant did "[a]ttend" and "participate fully" in the program, both of which were within his power to do. The appellant did not have full control over his ability to "successfully complete" the program, however; he was discharged because the therapist came to believe that he was being dishonest. Thus it was the therapist's discretion that caused the appellant to be in violation of a term of his community supervision.

As the trial court suggested, under an ordinary abuse-of-discretion review, our analysis would already be over: Discharge caused the appellant to be in violation, and there was evidence that the appellant was discharged. Such an analysis on our part, however, would be inadequate.

Revocation involves the loss of liberty and therefore implicates due process. "The central issue to be determined in reviewing a trial court's exercise of discretion in a [community supervision] revocation case is whether the [defendant] was afforded due process of law." It would surely offend due process if a defendant were discharged from his therapy program for a wholly inappropriate reason—such as illegal discrimination or mere caprice—and the bare fact of that discharge were used as a basis to revoke the defendant's community supervision. Yet, by an ordinary abuse-of-discretion review, such a revocation would be sustained.

What has happened here is that the trial court, through a condition of the appellant's community supervision, made the appellant's compliance with the terms of his community supervision subject to the discretion of a third party. In such a case, to determine whether the trial court abused its discretion we must also examine the third party's use of its discretion to ensure that it was used on a basis

12

that was rational and connected to the purposes of community supervision.[13]

The majority, however, declines Appellant's invitation, stating, "we decline to rely on a case reversing the same trial court on a different issue as a valid reason to disregard the law that applies to this case."[14]  With all appropriate respect to the majority, the *Leonard* court is dealing with the same trial judge and the same kind of condition of community supervision and the same provider.  Leonard was told by Strain to pass a polygraph test.  In the case now before this court, Appellant was told to discuss his sexual abuse of a child in a case that had been expunged because the trial court had found Appellant not guilty of the accusations.  The State argued at the hearing on adjudication and again argues on appeal that Appellant could have discussed other instances of his sexually abusing children, although there is no evidence that Appellant ever sexually abused any child.  A mere allegation, whether by the State or by a treatment provider, is not evidence.

Leonard made no objection to the polygraph requirement.  The Texas Court of Criminal Appeals, nevertheless, held that because the trial court ordered Leonard to both do things within his power to do, such as attend the program and participate fully, but also things not within his power to do, such as pass a polygraph test, that the appellate court should have determined whether Strain abused his discretion in

---

[13]*Leonard v. State*, 385 S.W.3d 570, 576–77 (Tex. Crim. App. 2012) (citations omitted).

[14]Majority Op.at 11.

13

discharging Leonard from therapy and therefore causing Leonard "to be in violation of a term of his community supervision."[15] The *Leonard* court concluded that because Strain's opinion was founded in inadmissible evidence, the only evidence supporting revocation was inadmissible, rendering the trial court's action in revoking Leonard's community supervision an abuse of discretion.[16]

Although I cannot agree with the *Leonard* court that a trial court can properly delegate its authority to a third party to determine whether community supervision should be revoked,[17] I do not agree with the majority here that we can ignore the mandates of *Leonard*. In the case now before this court, there is no showing that Appellant had the ability to comply with Strain's order to discuss sexually abusing children. The former trial judge had found Appellant not guilty in response to the only accusations against him, and those cases had been expunged.

The majority also suggests that I have attempted to "reach out and reverse the trial court on an issue that was not raised" because I would hold that the trial court abused its discretion by ordering, without hearing or benefit of counsel, jail confinement as a condition of community supervision. A trial court may abuse its discretion by ordering a condition of community supervision that deprives a

---

[15]*Leonard*, 385 S.W.3d at 577–78.

[16]*Id.* at 583.

[17]*See id.* at 577.

defendant of his conditional liberty without due process of law.[18] If that action of the trial court was not the basis of revocation and not the basis of the appeal, reversal may not necessarily be required. But here, it was merely one step down the slippery slope of an improper revocation. The majority appears to believe that because Appellant attempted to comply with improperly imposed conditions of community supervision, he could never complain of any action of the trial court. On appeal the State suggests that Appellant and his counsel were aware of all circumstances. But Appellant's counsel on appeal points out that they were never told that Appellant could choose another treatment provider. The fact that Appellant was tossed in jail during his community supervision with no motion, no hearing, and no lawyer is an inseparable part of the mosaic of this revocation that is now being appealed. The trial court abused its discretion at this point on the path to revocation, and we should say so. But I agree that this additional abuse of discretion by the trial court would not be grounds to reverse under the facts and posture of this case as a whole.

I cannot agree, however, with the majority's interpretation of *Gutierrez v. State*.[19] The *Gutierrez* court held that although a criminal defendant may waive his right to complain of improper conditions of community supervision, he "cannot agree to submit to a condition of community supervision that the criminal justice system

---

[18]*Id.* at 576 ("Though defendants are not entitled to community supervision as a matter of right, once a defendant is assessed community supervision in lieu of other punishment, this conditional liberty should not be arbitrarily withdrawn by the court . . . .") (internal quotation marks omitted).

[19]380 S.W.3d 167 (Tex. Crim. App. 2012).

15

simply finds intolerable and which is therefore, by definition, not even an option available to the parties."[20]  When the majority in the case before us states, "[T]he conditions that the trial court imposed in this case do not rise to the level of being an 'intolerable' invasion of federal prerogative in violation of the Supremacy Clause . . . ,"[21] the majority mistakenly narrows the *Gutierrez* holding, improperly limiting its reach to questions of federal preemption or conflicts with federal mandate.  I would hold that a probationer "cannot agree to submit to a condition of community supervision that the criminal justice system simply finds intolerable and which is therefore, by definition, not even an option available to the parties."[22]

I would further hold that the trial court abused its discretion (1) by placing Appellant on the sex offender caseload, (2) by ordering, without hearing or benefit of counsel, jail confinement as a condition of community supervision, (3) by delegating to Mike Strain the authority to set the conditions of community supervision, (4) by requiring Appellant to discuss the details of offenses of which he had been acquitted as well as the related records which had been expunged, and (5) by requiring Appellant to discuss uncharged sexual activity which could have been illegal and which was never shown to exist.  I would also hold that the trial court abused its discretion by revoking Appellant's community supervision because of his attempt to

---

[20] *Id.* at 175–76.

[21] Majority Op. at 12.

[22] *Gutierrez,* 380 S.W.3d at 175–76.

comply with article 55.03. That is, I would hold that the trial court abused its discretion by revoking Appellant's community supervision and proceeding to adjudication because the trial court found that Appellant, who had not been convicted of a sex offense, had failed to comply with the sex offender caseload conditions promulgated by a person who was neither a judge nor a community supervision officer and based on records which had been ordered expunged and Appellant's refusal to reveal facts that could lead to his criminal prosecution. I would additionally hold that claims that Appellant's counsel were told that Appellant could transfer to a provider other than Strain are not supported by the record and cannot, therefore, be considered.

Because the majority does not so hold, I must respectfully dissent.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: March 13, 2014

17