EX PARTE Patrick Taylor
SHAY, Applicant

NO. WR–84,007–01

Court of Criminal Appeals of Texas.

DELIVERED: December 14, 2016

**732**

Kurt Hopke, Attorney at Law, Houston, TX, for Applicant

Pamela Paaso, Assistant District Attorney, Houston, TX, for State of Texas

## OPINION

Keasler, J., delivered the opinion of the Court, in which Johnson, Hervey, Alcala, Richardson, and Newell, JJ., joined.

Does estoppel bar an applicant from seeking habeas corpus relief for a conviction based on a statute subsequently declared facially unconstitutional? We hold that it does not. We accordingly set aside Patrick Shay's conviction and remand the cause to the trial court to dismiss the indictment.

### I.

Pursuant to a plea bargain, Shay was convicted of improper photography or visual recording in violation of Texas Penal Code § 21.15(b)(1) and sentenced to two years' confinement, the maximum confinement permitted for the state-jail felony. In consideration for Shay's guilty plea, the State agreed not to file aggravated sexual assault or child pornography charges surrounding the same criminal episode. Shay's writ application prays for habeas relief by relying on this Court's opinion in *Thompson v. State*.[1] Five years after Shay's conviction, this Court held in *Thompson* that a portion of the former improper photogra-

phy or visual recording statute—specifically, Texas Penal Code § 21.15(b)(1)—was facially unconstitutional in violation of the First Amendment.[2] Section 21.15(b)(1) formed the basis of Shay's conviction.

The State and the habeas judge recommended that this Court grant Shay relief under *Thompson*. We ordered Shay's application be filed and set to determine whether an applicant, who negotiates a very favorable plea agreement resulting in a conviction for an offense later held to be unconstitutional, is estopped from challenging the conviction on the basis of its unconstitutionality.[3]

### II.

#### A.

Shay's improper photography conviction has discharged, and he therefore is not physically confined by virtue of the challenged conviction. But because the State used Shay's improper-photography conviction as a predicate for its later prosecution against him for being a felon in possession of a firearm, Shay suffers sufficient collateral consequences that we consider him "confined" for purposes of Texas Code of Criminal Procedure Article 11.07, § 3(c).[4] Thus this Court has jurisdiction to entertain the merits of Shay's application.

The dissent, however, would dismiss Shay's application for failing to establish that the subsequent felon-in-possession case is a sufficient collateral consequence of his improper-photography conviction.[5]

1. 442 S.W.3d 325 (Tex. Crim. App. 2014).

2. *Id.* at 349.

3. *Ex parte Shay*, No. WR–84,007–01, 2015 WL 9243109 (Tex. Crim. App. Dec. 16, 2015) (not designated for publication).

4. *See Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010).

5. *Post*, at 736 (Keller, P.J., dissenting).

The dissent's conclusion hinges on the theory that granting relief on the improper-photography conviction does not affect Shay's liability under the felon-in-possession statute.[6] Before accepting jurisdiction of an application, the dissent would require an applicant who is not physically confined to demonstrate that not only is he suffering a collateral consequence from his conviction, but that granting the relief sought would remove the fact of the collateral consequence or mitigate the length of the collateral consequence.[7] The dissent fuses the potential result of granting relief with the Court's jurisdiction to hear the claim in the first place. But these are distinct questions: one addresses whether the Court may entertain Shay's claim; the other addresses the consequences of granting relief.

In this case, our Article 11.07 jurisdiction does not turn on whether a subsequent prosecution relying upon the contested conviction would be completely undermined if, upon review of the application's merits, we were to grant relief. Shay's potential culpability for the felon-in-possession offense is irrelevant to whether he demonstrates "any collateral consequences"[8] of the conviction he now challenges.[9] Demonstrating collateral consequences is a jurisdictional requirement that, in *Ex parte Harrington*'s words, simply "trigger[s] application of art. 11.07."[10] Shay has done so, and therefore availed himself of an Article 11.07 remedy. Whether relief ultimately alleviates an applicant's collateral consequence is a different question.

When the dissent merges the two unrelated issues, it discounts the inherent speculative nature of particular collateral consequences, at least to the extent that it would declare that relief must inevitably relieve the applicant of the pleaded collateral consequence. *Harrington* itself offers an illustration. In that case, our analysis began with the general rule that "a person who files a habeas-corpus application for relief from a final felony conviction must challenge either the fact or length of confinement."[11] Harrington was not physically confined, so the question became whether Harrington could seek Article 11.07 relief. Because Harrington lost his job and was unable to find suitable employment as a result of the challenged conviction, the Court concluded that he demonstrated collateral consequences and the Court had jurisdiction to consider the merits of his application.[12] The Court held that Harrington's plea was involuntary, granted relief, and remanded the case to the trial court for resentencing.[13] In granting relief, the Court said nothing about "releasing" Harrington from his past and current employment predicament, nor could it. Nor could the *Harrington* Court say with any confidence that granting relief would affect

---

6. *Id.* (citing *Ex parte Jimenez*, 361 S.W.3d 679, 683–84 (Tex. Crim. App. 2012)).

7. *Post*, at 737 (Keller, P.J., dissenting).

8. TEX. CODE CRIM. PROC. art. 11.07, § 3(c).

9. *See Ex parte Harrington*, 310 S.W.3d at 457 (holding that a showing of a collateral consequence, without more, sufficiently establishes confinement and triggers Article 11.07).

10. *Ex parte Harrington*, 310 S.W.3d at 457. Accord *Ex parte Renier*, 734 S.W.2d 349, 353–54 (Tex. Crim. App. 1987) (dismissing "for want of jurisdictional requisites to granting relief, to wit: a final felony conviction and confinement").

11. *Ex parte Harrington*, 310 S.W.3d at 456 (citing *Ex parte Lockett*, 956 S.W.2d 41, 42 (Tex. Crim. App. 1997)).

12. *Id.* at 457–58.

13. *Id.* at 459–60.

Harrington's future employment prospects. We do not read *Harrington,* or any of our other precedents for that matter, to support the dissent's position.

### B.

*Rhodes v. State* was this Court's seminal case applying the estoppel doctrine in barring certain claims.[14] In that case, this Court held that "[a] defendant who has enjoyed the benefits of an agreed judgment prescribing a too-lenient punishment should not be permitted to collaterally attack that judgment on a later date on the basis of the illegal leniency."[15] The *Rhodes* Court highlighted two related variants of estoppel potentially applicable to collateral attacks on a conviction and sentence: estoppel by judgment and estoppel by contract.[16] The Court interpreted estoppel by judgment's application as follows: "[O]ne who accepts the benefits of a judgment, decree, or judicial order is estopped to deny the validity of propriety thereof, or of any part thereof, on any grounds; nor can he reject its burdensome consequences."[17] The only exception to this principle, the Court explained, is for challenges to the subject-matter jurisdiction of the court rendering the judgment.[18] Although *Rhodes* did not purport to apply estoppel by contract, it explained in dicta that estoppel by contract operates similarly: "[A] party who accepts the benefit under a contract is estopped from questioning the contract's existence, validity, or effect."[19]

■ Based solely on the written plea agreement, Shay negotiated what appears to be a "favorable" plea agreement. In pleading guilty to the maximum sentence for the state-jail felony, he avoided indictment for possession of child pornography and aggravated sexual assault, offenses exposing him to a maximum of ten years' confinement and a life sentence, respectively.[20] However, in truth, we cannot know how favorable Shay's agreement was; we cannot know the strength or weakness of the State's case or the potential exculpatory or impeaching evidence Shay possessed. Despite how favorable the plea agreement appears to be on a cold record, estoppel does not bar Shay's collateral attack on the conviction that results from that favorable negotiation.

We hold that the estoppel doctrines formulated and espoused by *Rhodes* are inapplicable to Shay's request for relief under *Thompson.* When the statute supporting a charging instrument and judgment is rendered unconstitutional, the effect of that holding alters the balance of the equitable principles animating *Rhodes*'s formulation of estoppel—that a defendant should not accept the benefit of an agreement and the judgment it contemplates, only to challenge it later. *Rhodes* never contemplated a subsequent holding of unconstitutionality; it dealt with a statutorily too lenient punishment and easily identifiable "benefits" of a particular judgment. The equitable principles that applied fittingly in that context do not apply with equal force in this one.

In *Smith v. State,* decided a little over a year ago, the Court concluded that "an unconstitutional statute is void from its inception," and that upon being declared

---

14. 240 S.W.3d 882, 889 (Tex. Crim. App. 2007).

15. *Id.* at 892.

16. *Id.* at 891.

17. *Id.*

18. *Id.*

19. *Id.*

20. *See* TEX. PENAL CODE §§ 22.021(e), 43.26(d) (West 2008).

unconstitutional, the statute "is as if it had never been." [21] After this Court delivered its *Thompson* opinion, there is no longer any law upon which to base Shay's improper-photography conviction. [22] So in light of *Smith*, Shay simply could not agree to a judgment convicting and sentencing him under a legally unenforceable statute. [23] Nor could he "accept the benefits of the judgment of conviction in this case." [24] We need not weigh the Restatement (Second) of Contracts' factors to come to the inevitable conclusion that Shay's plea agreement is unenforceable on public-policy grounds. This is so because the executed contract between Shay and the State contemplated his confinement for violating a facially unconstitutional statute that contravenes the First Amendment [25]—undoubtedly one of the public's most cherished liberties. Public policy would not permit a party to contract for his own confinement for violating a law retroactively considered to be no law at all.

Because *Smith* tells us that Shay's statute under which he was convicted "is as if it never existed," then, as Shay argues in his brief, the statute's "non-existence" undermines the trial court's subject-matter jurisdiction as well. Indeed, *Smith*'s logic lends support to Shay's argument: If there is no law supporting Shay's conviction, then there is no law over which the district court had subject-matter jurisdiction. [26] So even if *Rhodes*'s concept of estoppel, in theory, bars claims for relief under case law invalidating a facial unconstitutional statute, the claim implicitly satisfies the subject-matter-jurisdiction exception *Rhodes* carved from estoppel by judgment's general applicability.

### III.

We hold that Shay is not barred by estoppel from seeking relief based on the subsequent invalidation of the statute under which he was convicted. Therefore, because the statute supporting Shay's conviction is unconstitutional and is considered non-existent, we set aside Shay's conviction and remand the cause to the trial court to dismiss the indictment. [27]

Keller, P.J., filed a dissenting opinion.
Yeary, J., filed a dissenting opinion.
Meyers, J., dissented.

**KELLER, P.J., filed a dissenting opinion.**

Applicant pled guilty to improper photography and received a two-year sen-

---

**21.** 463 S.W.3d 890, 895 (Tex. Crim. App. 2015) (citing *Reyes v. State*, 753 S.W.2d 382, 383 (Tex. Crim. App. 1988)) (internal quotations omitted).

**22.** *See id.* at 895.

**23.** *Cf. Gutierrez v. State*, 380 S.W.3d 167, 175–76 (Tex. Crim. App. 2012) (holding that a defendant could not "agree to submit to a condition of community supervision that the criminal justice system simply finds intolerable and which is therefore, by definition, not even an option available to the parties.").

**24.** *See Rhodes*, 240 S.W.3d at 891.

**25.** *Cf. Gutierrez*, 380 S.W.3d at 177–78 (weighing Restatement (Second) of Contracts' factors to conclude that Gutierrez's deporta-

tion condition of her community supervision was unenforceable and that estoppel by contract did not apply).

**26.** *See Smith*, 463 S.W.3d at 895. *See also* GEORGE E. DIX & JOHN M. SCHMOLESKY, 40 TEX. PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 4:13 (3d ed.) ("A statute creating a criminal offense that is constitutionally invalid deprives the court and any official acting on the basis of the invalid statute of the authority to act, including the subject-matter jurisdiction of the convicting court[.]").

**27.** *See Ex parte Chance*, 439 S.W.3d 918 (Tex. Crim. App. 2014).

tence. A document attached to the State's answer indicates that he used his cell phone to video record a twenty-eight year old man having sex with a fifteen-year-old girl. In exchange for his plea, the State agreed not to file aggravated sexual assault or child pornography charges arising out of the transaction. Applicant did not appeal his conviction. The parties and the trial court agree that applicant's sentence has discharged. Applicant nevertheless claims that he is suffering collateral consequences of his conviction because he is currently in the custody of the Harris County Jail on a Motion to Adjudicate Guilt for a charge of unlawful possession of a firearm by a felon.

## A. Firearm Offense—Not a Collateral Consequence

To be entitled to post-conviction relief under Article 11.07,[1] an applicant must be in "confinement" as a result of his conviction.[2] Under the statute, confinement includes actual confinement on the conviction or any collateral consequence resulting from the conviction.[3]

Applicant has failed to establish that the proceedings in his felon-in-possession case are a collateral consequence of this conviction. The charge of possession of a firearm by a felon does not depend on the continu-

ing validity of the prior conviction that made the defendant a felon. Under the felon-in-possession-of-a-firearm statute, all that matters is that the defendant was classified as a felon at the time he possessed the firearm; any later decision setting aside that prior felony does not retroactively affect the defendant's status for that purpose.[4] Even though the Court overturns this conviction, applicant's criminal liability under the felon-in-possession statute will not be affected.

It is true that we have suggested that a statute that is declared unconstitutional on its face is "void from its inception" and "stillborn,"[5] but there are exceptions to that principle.[6] Even though a person's felony status may be caused by what turns out to be a facially unconstitutional statute, the law still prohibits him from possessing a firearm. His recourse is to challenge the statute successfully *before* possessing a firearm.[7] The United States Supreme Court has followed this rule with respect to a similar federal felon-in-possession-of-a-firearm statute even when the prior felony conviction was invalid because the defendant was not afforded an attorney (in violation of *Gideon v. Wainwright*[8])[9]—one of the few errors that we have held renders a conviction "void."[10]

---

1. TEX. CODE CRIM. PROC. art. 11.07.

2. *Ex parte Cooke*, 471 S.W.3d 827, 830 (Tex. Crim. App. 2015); *Ex parte Renier*, 734 S.W.2d 349, 351 (Tex. Crim. App. 1987).

3. TEX. CODE CRIM. PROC. art. 11.07, § 3(c); *Cooke, supra*; *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010).

4. *Ex parte Jimenez*, 361 S.W.3d 679, 683–84 (Tex. Crim. App. 2012).

5. *Smith v. State*, 463 S.W.3d 890, 895 (Tex. Crim. App. 2015).

6. *Karenev v. State*, 281 S.W.3d 428, 431 (Tex. Crim. App. 2009) (quoting *Chicot County*

*Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329 (1940)) (internal quotation marks omitted).

7. *See Lewis v. United States*, 445 U.S. 55, 64–65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980).

8. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

9. *See Lewis*, 445 U.S. at 56, 65, 100 S.Ct. 915.

10. *See Nix v. State*, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001) (listing, as one of four errors in a nearly exclusive list of situations in which a criminal judgment is void, when "an indigent defendant is required to face crimi-

The Court contends that it does not matter that granting relief will not affect applicant's status as a felon for purposes of the felon-in-possession-of-a-firearm statute because Article 11.07 jurisdiction does not turn on "the potential result of granting relief." But it does. In *Ex parte Lockett*, we explained that "the relief sought must request a change of either the fact or the length of confinement."[11] And in *Ex parte Renier*, when we discussed the "confinement" requirement, we explained that Article 11.07 requires this Court to "enter its judgment remanding the petitioner to *custody* or ordering his *release*."[12] Although the legislature partially superseded *Renier*'s holding by enlarging the definition of "confinement" to include "any collateral consequence resulting from the conviction," *Lockett* and *Renier* both require that this Court be able to *release* applicant from that confinement as more broadly defined. And the habeas statute still requires that this Court enter a judgment either "remanding the applicant to custody or ordering his release."[13] We have broadly construed "release" to include any sort of remedy that removes the fact of confinement or mitigates the length of confinement,[14] but the habeas statute does not confer on this Court the authority to impose a remedy that does not in some sense "release" the offender from "confinement." Granting relief on applicant's unconstitutional-statute claim will not release him

from the supposed collateral consequence of being a felon for purposes of the felon-in-possession-of-a-firearm statute.

**B. Estoppel—Cannot Show Use of Prior Felony as a Collateral Consequence**

But suppose that the continuing validity of the improper-photography conviction mattered because, for instance, it was being used simply to enhance punishment under Texas Penal Code § 12.42. The doctrine of estoppel would bar the applicant in this case from establishing collateral consequences because, absent the favorable plea agreement, it is very likely that he still would have had a felony conviction. The doctrine of estoppel can trump the ability to obtain relief even from the violation of an absolute requirement or prohibition.[15]

Applicant received a favorable plea deal, to say the least: two years in state jail for improper photography and an agreement that the State would not prosecute him for aggravated sexual assault or child pornography. Aggravated sexual assault is a first-degree felony with a maximum life sentence.[16] Possession of child pornography is a third-degree felony with a maximum sentence of ten years.[17] And the State might have sought stacked sentences by prosecuting the sexual assault and child pornography counts separately.[18] An aggravated sexual assault conviction would also have

---

nal trial proceedings without appointed counsel, when such has not been waived, in violation of *Gideon v. Wainwright*").

11. 956 S.W.2d 41, 42 (Tex. Crim. App. 1997). *See also Harrington*, 310 S.W.3d at 456 (habeas applicant "must challenge either the fact or length of confinement").

12. 734 S.W.2d 349, 351 (Tex. Crim. App. 1987) (op. on applicant's motion for reh'g) (emphasis in original).

13. TEX. CODE CRIM. PROC. art. 11.07, § 5.

14. *See Harrington*, 310 S.W.3d at 456; *Lockett*, 956 S.W.2d at 42.

15. *Gutierrez v. State*, 380 S.W.3d 167, 177 (Tex. Crim. App. 2012).

16. TEX. PENAL CODE § 22.021(e) (West 2008).

17. *Id.* § 43.26(d).

18. *See* TEX. CODE CRIM. PROC. art. 42.08 (West 2008)

subjected applicant to sex-offender registration requirements, which is not the case with a conviction for improper photography.[19]

Had applicant not obtained this extremely favorable deal, the State could have prosecuted him for aggravated sexual assault or child pornography, and if the evidence was in fact memorialized on video (as the conviction for improper photography suggests), then conviction would seem fairly certain, and in that event, applicant would still have had a felony conviction at the time he possessed the firearm. Our statement in *Rhodes* concerning the applicability of estoppel seems especially pertinent here: "Had he complained about the illegal leniency" at an earlier point in time, "the State could likely have obtained a legal judgment that would now be available for enhancement purposes. But instead, [the defendant] quietly enjoyed the benefits of the illegally lenient judgment, challenging it now only because, due to his own subsequent criminal conduct, the judgment can be used to enhance his punishment for a new offense."[20]

None of this might matter if applicant were imprisoned or on parole for this offense. As the Court explains, the invalidation of a facially unconstitutional statute that defines the offense would appear to deprive a trial court of subject matter jurisdiction over the offense. But applicant's goal of obtaining relief on habeas is complicated by the fact that his sentence has discharged. To even mount his challenge to the conviction, he must first establish collateral consequences. We cannot even get to applicant's subject-matter-jurisdiction claim until collateral consequences have been established. And the equities that the Court speaks about, with

regard to an offense that should not exist because the statute is facially unconstitutional, are those that weigh in favor of a defendant currently being imprisoned or on parole. The equities seem to have much less force for a defendant whose sentence has already discharged and who would likely have been subject to a far greater sentence absent the plea bargain.

In summary, applicant is suffering no collateral consequences because he was in fact a felon at the time he possessed the firearm, and his status as a felon at that point in time is not affected by the subsequent invalidation of the improper-photography statute. And applicant is estopped from claiming the use of the prior conviction as a collateral consequence in this case because, absent the very favorable plea agreement he obtained, the State would in all likelihood have obtained a felony conviction that would now be available for use in his felon-in-possession-of-a-firearm prosecution. I would dismiss the application.

YEARY, J., filed a dissenting opinion.

For the reasons expressed in my dissenting opinion in *Ex parte Chang*, 485 S.W.3d 918 (Tex. Crim. App. 2016) (Yeary, J., dissenting), I dissent to the Court granting post-conviction habeas corpus relief on the grounds that Applicant was convicted under a statute that was later declared to be unconstitutionally overbroad without deciding whether the statute was unconstitutional as applied to Applicant. This case illustrates the absurdity of granting retroactive relief regardless of whether the statute functioned unconstitutionally with respect to a particular applicant's conduct.

Applicant was indicted for the offense of Improper Photography or Visual Record-

---

**19.** *Id.* art. 62.001.

**20.** *Rhodes,* 240 S.W.3d at 891. *See also Cooke,* 471 S.W.3d at 832 n.27 (quoting *Rhodes*).

ing under Section 21.15(b)(1) of the Penal Code. TEX. PENAL CODE § 21.15(b)(1).[1] He pled guilty to that state jail felony offense, and his punishment was assessed at two years' confinement in a state jail. Judgment was entered on August 19, 2009. Applicant did not appeal his conviction. Since that time, this Court has declared the statutory provision under which Applicant was convicted, Section 21.15(b)(1), to be unconstitutional on its face. *Ex parte Thompson*, 442 S.W.3d 325 (Tex. Crim. App. 2014). Applicant now seeks relief from his conviction, arguing that we should either declare him to be actually innocent of the offense or else vacate his conviction and dismiss the indictment against him as based upon a facially unconstitutional statute. Based upon *Ex parte Fournier*, 473 S.W.3d 789 (Tex. Crim. App. 2015), today the Court denies Applicant the former relief while granting him the latter. I dissented in *Fournier* and again in *Chang*, and I dissent again today.

In my dissent in *Fournier*, I argued that we ought to consider not automatically giving retroactive application to a judicial decision declaring a penal statute to be unconstitutionally overbroad under the First Amendment. Instead, I suggested that we should consider only granting post-conviction habeas corpus relief "to those applicants who can establish that their conduct did not fall within the plainly legitimate sweep of the overbroad statute." 473 S.W.3d at 805 (Yeary, J., dissenting). I will not rehash the substance of my dissent here. I write further today only because this case illustrates the sensibleness of my suggestion.

In the plea papers, Applicant judicially confessed to the offense as alleged in the indictment, which simply charged an offense in the terms of the statute, the only elaboration being the name of the complainant. For its part, the State has attached a document to its answer which it designates as "Justice Information Management System probable cause, cause no. 1195055" (a number that corresponds to Applicant's cause number). This document identifies a complainant with the same name as the complainant alleged in the indictment and describes (presumably to establish probable cause for an arrest warrant) the offense he committed against her. It states:

THE COMPLAINANT TOOK XANAX PILLS AND WHILE PASSED OUT JOSHUA GEHRER A 28 YEAR OLD MAN HAD SEX WITH THE COMPLAINANT, A 15 YEAR OLD GIRL. WHILE DEF. GEHRER WAS HAVING SEX WITH THE JUVENILE COMPLAINANT, THIS DEFENDANT TOOK VIDEOS OF THE ACT ON HIS PHONE.

This hardly seems to establish that the statute operated unconstitutionally as applied to Applicant's particular conduct.

In *Thompson*, the Court recognized that the Improper Photography or Visual Recording statute may well cover some conduct that may legitimately be proscribed. The Court explained:

The State asserts an interest in protecting the privacy of those [persons] photographed or recorded. Privacy constitutes a compelling government interest when the privacy interest is substantial and the invasion occurs in an

---

1. Prior to its amendment by Acts 2015, 84 th Leg., ch. 955, §§ 1, 2, eff. June 18, 2015, this provision read: "A person commits an offense if the person ... by videotape or other electronic means records ... a visual image

of another at a location that is not a bathroom or private dressing room ... without the other person's consent ... and ... with intent to arouse or gratify the sexual desire of any person[.]"

intolerable manner. We agree with the State that substantial privacy interests are invaded in an intolerable manner when a person is photographed without consent in a private place, such as a home, or with respect to an area of the person that is not exposed to the general public, such as up a skirt.

\* \* \*

Subsection (b)(1) could ... be narrowed by adding an element that requires that a person's privacy interest be invaded as a result of the place of the person recorded or the manner in which a visual recording is made.

\* \* \*

As we explained above, § 21.15(b)(1) does apply to the situation in which a non-consensual photograph is taken of a person in a private place, such as the home, and the situation in which a photograph is taken of an area of a person's body that is not exposed to the public, such as when a photograph is taken up a woman's skirt. Assuming these to be legitimate applications of the statute, we address the overbreadth question.

442 S.W.3d at 348–49 (footnotes omitted).

Likewise, if we assume that the statute has at least as much plainly legitimate sweep as we claimed in *Thompson*, I believe it to be undeniable that Applicant's conduct, if accurately reflected in the "Justice Information Management System" document quoted above, clearly falls within it. In any event, Applicant has not alleged that the offense as he committed it does *not* fall within those possible applications of Section 21.15(b)(1) that are not unconstitutional.

For the reasons given in my dissenting opinions in *Fournier* and *Chang*, I would not grant Applicant relief retroactively, on authority of *Ex parte Thompson*, when he is challenging the constitutionality of the statute for the first time in post-conviction habeas corpus proceedings and his conduct was in no conceivable way justifiable as protected First

Amendment expression. Neither the statute nor the State has violated Applicant's constitutional right to free speech, and society's interest in preventing any chilling effect that might have been caused by Section 21.15(b)(1) has been adequately served. Automatically granting relief to Applicant under these circumstances is pointless.

I respectfully dissent.