

# In the Court of Criminal Appeals of Texas

No. WR-94,041-01

EX PARTE JOSE D. GONZALEZ,

*Applicant*

On Application for a Writ of Habeas Corpus
Cause No. 1191091-A in the 208th District Court
From Harris County

YEARY, J., filed a dissenting opinion.

The Court today grants relief. Regarding Applicant's actual innocence claim, I agree with the majority. For the reasons stated in *Ex parte Fournier*, Applicant is *not* actually innocent. *See Ex parte Fournier*, 473 S.W.3d 789, 790–96 (Tex. Crim. App. 2015) (explaining that an actual innocence claim is a factually based claim alleging that newly discovered evidence shows that the applicant did not commit the

charged conduct as a matter of historical fact). In this case, Applicant's *purely legal* basis for his claim that the convicting statue is unconstitutionally overbroad does not amount to an actual innocence claim.[1]

I nevertheless dissent to the Court's ultimate disposition of this

---

[1] This case is distinguishable from *Ex parte Warfield*, in which I agreed with the Court that the Applicant therein was "actually innocent." *Ex parte Warfield*, 618 S.W.3d 69, 74 (Tex. Crim. App. 2021). In *Warfield*, the Applicant pled guilty to fraudulent possession of identifying information and to possession of more than *ten* "items . . . possessed," which made the offense a second-degree felony. After Warfield's plea, this Court, in *Ex parte Cortez*, construed the phrase "item of . . . identifying information," in an opinion, for the very first time. 469 S.W.3d 593 (Tex. Crim. App. 2015). That construction of the unit of prosecution language revealed that Warfield had actually possessed only *six* "items," meaning that he was, in fact, never guilty of the second-degree felony, as a matter of historical fact, pursuant to a proper understanding of the law involved. The Court's decision in *Warfield* explained that, in order to be guilty of the greater offense, Warfield must have possessed a certain number of "items," and he in fact never possessed that number of "items." It was a factually and historically based actual innocence claim. In this case, however, Gonzales does not claim that he did not, in fact, commit the exact conduct for which he was convicted. He merely brings the purely *legal* claim that he is entitled to retroactive relief since he was convicted under a statute that this Court has subsequently declared to be overbroad.

If the Applicant in this case had argued that he was convicted under a facially unconstitutional statute that is unconstitutional in every possible application, rather than simply overbroad, I would not distinguish this Applicant's claim from that in *Warfield*. If Applicant had brought such a claim, he would be arguing that he in fact never committed any constitutionally proscribable conduct, making him "actually innocent" in the same absolute sense as the applicant in *Warfield*. Just as the statute in *Warfield* meant what the Court found it to mean since the moment of its enactment, a facially unconstitutional statute, invalid in every application, is void from the moment of enactment. Here, with an Applicant seeking retroactive relief from conviction under a statute with at least *some* plainly legitimate applications, it is not necessarily the case that Applicant has demonstrated that he never in fact committed any constitutionally proscribable conduct. Applicant is bringing a legal claim without alleging anything about the conduct he in fact committed.

case. In 2009, Applicant pled guilty to the state jail felony of improper photography under Texas Penal Code Section 21.15(b)(1). TEX. PENAL CODE § 21.15(b)(1). After that plea, this Court held that Section 21.15(b)(1) was facially unconstitutional, as overbroad. *Ex parte Thompson*, 442 S.W.3d 325, 351 (Tex. Crim. App. 2014). Subsequently, Applicant brought this 11.07 collateral attack against his final conviction, seeking relief under *Thompson*. *See* TEX. CODE CRIM. PROC. art. 11.07. Today, the Court sets aside Applicant's final conviction because he was sentenced under a statute later held to be unconstitutional.

I dissent for the reasons I have stated in many similar dissenting opinions. Namely, I question the Court's willingness to give decisions such as *Ex parte Lo* and *Ex parte Thompson*, in which the Court decides that a statute is facially unconstitutional as overbroad, the power of retroactive application—even in post-conviction habeas corpus proceedings. *See Ex parte Shay*, 507 S.W.3d 731, 738 (Tex. Crim. App. 2016) (Yeary, J., dissenting) (dissenting to retroactive application of *Thompson*); *Ex parte Chang*, 485 S.W.3d 918, 918–19 (Tex. Crim. App. 2016) (Yeary, J., dissenting) (dissenting to retroactive application of *Thompson*); *Fournier*, 473 S.W.3d at 800 (Yeary, J., dissenting) (dissenting to retroactive application of *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. app. 2013)).

The Court should more carefully consider whether retroactive application through post-conviction 11.07 collateral attack is necessary, given the underlying purpose of the First Amendment overbreadth doctrine. Beyond necessity, the Court should consider whether

retroactive application through post-conviction 11.07 collateral attack is fair, given the windfall we are repeatedly granting applicants who have not shown or even claimed that their own First Amendment rights have been harmed. And it is *not* necessary.

Even if retroactive relief from convictions under overbroad statutes were appropriate at some other procedural stage, such a claim should not be entertained by this Court in a post-conviction 11.07 collateral attack. As a foundational rule, "a post-conviction writ of habeas corpus is reserved for those instances in which there was a jurisdictional defect in the trial court which renders the judgment void or for denials of fundamental or constitutional rights." *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994). Granting applicants post-conviction retroactive relief, without first requiring the applicants to show that their own constitutional rights have been violated, goes against this threshold requirement.

## I. GENERAL RULE FOR FACIAL UNCONSTITUTIONALITY

When bringing a claim that a statute is unconstitutional on its face, the starting point is to show that the statute is "unconstitutional in every conceivable application[.]" *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984). In other words, the most basic claim of facial unconstitutionality is that none of a statute's possible applications, in the past, present, or future, has been or ever could be valid. From this understanding of facial unconstitutionality, Texas courts logically recognize that a statute with no conceivable valid application is "void from its inception," "stillborn," and "amounts to nothing and accomplishes nothing[.]" *Reyes v. State*,

753 S.W.2d 382, 383 (Tex. Crim. App. 1988).

The propriety of retroactive relief from convictions under these facially unconstitutional statutes is uncontroversial and apparent. *Fournier*, 473 S.W.3d at 801 (Yeary, J., dissenting) ("Given this general rule—that an unconstitutional statute is inoperable 'from its inception'—it may seem redundant or even pointless to engage in an analysis of retroactivity of the judicial decision that declared the statute to be unconstitutional.") (quoting *Reyes* 753 S.W. at 383). Such a statute is lifeless not just from the date a court held it to be unconstitutional, but from the moment of its enactment. *Id.* Because there are no circumstances in which the statute can be or could have been validly applied, any person convicted under the statute at any point in time necessarily has had his rights infringed upon.

## II. FIRST AMENDMENT SUBSTANTIAL OVERBREADTH DOCTRINE

In *Ex parte Thompson*, this Court did not hold the improper photography statute unconstitutional in the sense that every conceivable application of the statute was invalid. Instead, the Court decided that the statute was facially unconstitutional because it was "overbroad." *Thompson*, 442 S.W.3d at 349–51. As explained by the United States Supreme Court in *Taxpayers for Vincent*, "[t]here are two quite different ways in which a statute or ordinance may be considered invalid 'on its face'—either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" *Taxpayers for Vincent*, 466 U.S. at 796.

For a statute to be unconstitutionally overbroad, it does not have

to be the case that every imaginable application has been or would be unconstitutional. Rather, under the overbreadth doctrine, a statute must "'prohibit[ ] [only] a substantial amount of protected expression[,]'" *Thompson*, 442 S.W.3d at 350 (quoting *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002)), in relation to the statute's "'plainly legitimate sweep.'" *Id.* at 349 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).

The propriety of retroactive relief from final convictions under an overbroad statute should be more controversial; it is certainly less apparent than retroactive relief from convictions under a statute with only unconstitutional applications. *See Fournier*, 473 S.W.3d at 803 (Yeary, J., dissenting) ("A defendant finally convicted pursuant to a statute that is found only to be constitutionally overbroad is unlike a defendant who was convicted pursuant to a statute that has no conceivable constitutional applications. * * * [R]etroactively declaring his conviction void ab initio would seem arguably to be neither necessary nor just."). Because the doctrine frankly concedes that an overbroad statue has *at least some* legitimate sweep, it may be that many of the prior convictions under the statute were constitutional. *Id.*

Another way to understand the lighter burden attached to overbreadth claims is in terms of standing. Ordinarily, litigants do not have standing to come before a court to raise others' rights. Parties must have their own concrete stake in the outcome of the case. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012) ("In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court. This

parallels the federal test for Article III standing[.]"). Carefully considered principles of judicial restraint justify these strict standing requirements.

When a court hears First Amendment overbreadth claims, it cautiously strays from established standing requirements and allows parties to appear before it who have not personally been harmed. As the doctrine of overbreadth accepts, the party before the court may have been punished under the statute's plainly legitimate sweep. The United States Supreme Court describes the doctrine as an "exception" by which statutes "should be subject to challenge even by a party whose own conduct may be unprotected." *Taxpayers for Vincent*, 466 U.S. at 798.

## III. UNDERLYING CONCERN OF THE OVERBREADTH DOCTRINE: THE CHILLING EFFECT

The specific danger presented by overbroad statutes that justifies both the lighter burden a claimant must meet, and also the relaxation of ordinary standing requirements, is the so-called "chilling effect." As explained by the United States Supreme Court, "[t]his exception from the general rule is predicated on 'a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Id.* at 799 (quoting *Broadrick*, 413 U.S. at 612). As reiterated by this Court, the doctrine "reflects the judgement that 'the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted[.]'" *Ex parte Lo*, 424 S.W.3d at 18 (quoting *Broadrick*, 413 U.S. at 612). Flipping standing on its head, the overbreadth doctrine's primary concern is not to protect the party standing directly before a court. Instead, the

doctrine protects the outside world of potential speakers who would have engaged in First Amendment activity but for reading the overbroad statute and fearing retribution.

Today, the Court follows a pattern of cases in which it goes farther than is necessary, or even justified, to abate the concern that motivates the overbreadth doctrine. Going beyond allowing an uninjured party to initially claim a statute is overbroad, the Court takes the additional step of allowing presumptively uninjured habeas applicants to nullify final convictions, even in post-conviction collateral attacks. The Court takes this gratuitous and socially costly step despite its own admonishment that the overbreadth doctrine is a "'strong medicine' to be employed with hesitation and only as a last resort[.]" *Thompson*, 442 S.W.3d at 349 (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)).

This Applicant's claim illustrates the need for us to think more critically about retroactive relief from convictions under overbroad statutes. Applicant does not claim that the chilling effect of the law under which he was prosecuted remains a threat to the outside world. He does not claim that the chilling effect of the overbroad statute muted any of his own speech that the First Amendment would have protected. Instead, in testimony before the Houston Immigration Court, Applicant explained that he was convicted because he "used his cell phone to take a photograph up a woman's skirt." *Matter of Gonzalez-Cazares, Jose Domingo,* Houston, Texas Immigration Court Decision File Number A058-079-828, at 3.

When explaining what kind of potentially protected expression the Court believed might fall under the illegitimate sweep of Texas

Penal Code Section 21.15(b)(1), the *Thompson* Court pointed to indictments charging defendants with taking pictures "of people in a public place (a water park) and of areas of the person that were exposed to the public (wearing swimsuits)." *Thompson*, 442 S.W.3d at 350. But in identifying the clearest examples of conduct falling within the statute's plainly legitimate sweep, the Court explained: "[Section] 21.15(b)(1) does apply to the situation in which a non-consensual photograph is taken of a person in a private place, such as the home, and the situation in which a photograph is taken of an area of a person's body that is not exposed to the public, *such as when a photograph is taken up a woman's skirt*." *Id.* at 349 (emphasis added).

This is not the first case in which examining the actual conduct of an applicant highlights the absurdity of granting retroactive relief without asking whether the particular conviction fell within the plainly legitimate sweep of the overbroad statute. I pointed out the same scenario in *Ex parte Shay*, in which the applicant was convicted after taking a video of others having sex. *Shay*, 507 S.W.3d at 739 (Yeary, J., dissenting). There, I reasoned from this Court's discussion in *Thompson* that such a conviction "hardly seems to establish that the statute operated unconstitutionally as applied to Applicant's particular conduct." *Id.* Here, it is even more apparent that the statute operated constitutionally as applied to this Applicant; he was convicted for engaging in the exact conduct the Court itself, in *Thompson*, made a point to identify as easily fitting within the statute's plainly legitimate sweep.

Gifting this Applicant with retroactive relief does nothing to serve

the chilling-effect concern underlying the overbreadth doctrine. The risk of inhibiting First Amendment activity ends once a court holds that an overbroad statute is unconstitutional. Such a decision eliminates the chilling message previously broadcast to potential speakers, halts all future convictions under the statute, and notifies the Legislature of its risky drafting. *Fournier*, 473 S.W.3d at 803 (Yeary, J., dissenting). The legitimate purposes of the overbreadth doctrine, if any, have already been served by our decision in *Thompson*. *Id.* Prospective application is enough. *Id.* Allowing retroactive relief at this stage—in no less than post-conviction collateral habeas corpus proceedings—causes societal harm by allowing unprotected speech to go unpunished and by letting defendants escape final convictions well after the fact. The benefits of the overbreadth doctrine are no longer outweighed by the possibility that protected speech of others may be chilled or circumscribed.

## IV. CONCLUSION

In *Fournier*, I expressed that I would "hesitate" to grant post-conviction retroactive relief on the ground that an applicant was convicted under a statute later held to be overbroad without requiring the applicant to show that the statute was unconstitutional as it applied to their conviction. *Id.* at 800. I no longer hesitate. *See Ex parte Mitcham*, 542 S.W.3d 561, 567 n.1 (Tex. Crim. App. 2018) ("In *Fournier*, I argued that the Court should not grant retroactive relief on the grounds that the statute was later declared unconstitutionally overbroad without first deciding whether an applicant needed to show that the statute was unconstitutional as it applied to him. * * * I have since concluded that this question should be answered in the

affirmative."); *Chang*, 485 S.W.3d at 918–19 (Yeary, J., dissenting) (dissenting to the Court's grant of retroactive relief based on *Thompson*); *Shay*, 507 S.W.3d at 738–40 (Yeary, J., dissenting) (dissenting to the Court's grant of retroactive relief based on *Thompson*).

Final convictions under a statute later declared overbroad should not receive retroactive nullification from this Court in every case. Retroactive relief does not naturally follow when the doctrine itself admits that at least some of the convictions that occurred prior to the overbreadth holding may have been perfectly legitimate and constitutional. Additionally, the sweep we give to the overbreadth doctrine should mirror the justification for the doctrine itself. The risk—that the very existence of a particular law might suppress First Amendment activity—justifies straying from ordinary standing requirements only to the extent that an uninjured party may bring the *initial* claim that a statute is overbroad.

The chilling effect should no longer be feared once a court like ours has explained that a statute is unconstitutionally overbroad. Once that has happened, we should return to traditional principles of standing for applicants challenging their prior, final convictions under the overbroad statute. Instead of weaponizing our overbreadth decisions with the power of indiscriminate, retroactive habeas relief, we should require post-conviction applicants to show that their convictions did not fall within the plainly legitimate sweep of the overbroad statute.

**FILED:**     October 19, 2022
**PUBLISH**