

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00716-CR

**EX PARTE** George **TROTTI**

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR7385-W2
Honorable Ron Rangel, Judge Presiding

Opinion by:   Beth Watkins, Justice

Sitting:   Patricia O. Alvarez, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: November 22, 2023

AFFIRMED

Appellant George Trotti unsuccessfully sought post-conviction habeas relief from a conviction of one count of misdemeanor assault and now appeals. We affirm.

### BACKGROUND

In the underlying case, the complainant reported to police that Trotti picked her up outside a bus depot and raped her. A grand jury indicted him on two counts of sexual assault and he opted for a bench trial. The complainant testified that Trotti forced her into his car and raped her, causing her pain. She denied ever having worked as a prostitute. Before the defense began its case-in-chief, defense counsel approached the assistant district attorney to talk about the facts underlying the complainant's theft conviction. The conversation led to a mid-trial plea offer to waive count two and "just do Count One and go on the lesser" assault-bodily injury. Trotti agreed to the offer then

pled nolo contendere to—and was convicted of—the misdemeanor offense of assault-bodily injury. On August 7, 2019, the trial court sentenced him to one year in Bexar County Jail and a $4,000 fine. In recognition of the fact that Trotti had already spent more than fifteen months in Bexar County Jail while awaiting trial, the trial court pronounced the sentence "as satisfied."

On March 3, 2022, Trotti filed the article 11.09 application for writ of habeas corpus that is the subject of this appeal. Trotti, who was on parole for a previous conviction at the time he accepted the plea deal in 2019, alleged that his conviction for the assault-bodily injury charge caused his parole to be revoked. He claimed that revocation of his parole and the loss of "44 years of good time, [and] all of his street time" was a collateral consequence of his conviction in this case. He argued, in part, that: (1) this conviction is void because assault-bodily injury is not a lesser-included offense of sexual assault as charged in the indictment; and (2) he received ineffective assistance of counsel, resulting in an involuntary plea. In response to the trial court's order, both of Trotti's trial counsel presented their own affidavits.

The trial court denied relief and issued findings of fact and conclusions of law. It held that the judgment was not void and that Trotti had not shown that his counsel was ineffective or that his plea was involuntary. Trotti appeals.

## ANALYSIS

### *Applicable Standard of Review*

"A defendant convicted of a misdemeanor offense may attack the validity of the conviction by way of habeas corpus if he is either (1) confined or restrained as a result of a misdemeanor charge or conviction, or (2) is no longer confined, but is subject to collateral legal consequences resulting from the conviction." *State v. Collazo*, 264 S.W.3d 121, 125–26 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Such an applicant "must establish entitlement to such relief by a preponderance of the evidence." *State v. Garcia*, 651 S.W.3d 506, 511 (Tex. App.—Houston [14th

Dist.] 2022, pet. ref'd). "An appellate court reviewing a habeas judge's ruling in an article 11.09 application for writ of habeas corpus must view the evidence in the record in the light most favorable to the judge's ruling and must uphold that ruling absent an abuse of discretion." *Diamond v. State*, 613 S.W.3d 536, 544 (Tex. Crim. App. 2020). "An appellate court affords almost total deference to a habeas court's factual findings when they are supported by the record, especially when those findings are based on credibility and demeanor." *Id*. "This degree of deference also applies to any implied findings and conclusions supported by the record." *Id*. "However, if the resolution of the ultimate question turns only on the application of legal standards, the appellate court reviews those determinations de novo." *Id*. "The reviewing court will uphold the habeas court's ruling if it is correct under any theory of applicable law." *Id*. at 544–45.

### *Confinement Under Article 11.09*

Trotti discharged his assault-bodily injury sentence prior to filing this habeas application. But he alleges that this conviction caused him to suffer collateral consequences sufficient to trigger the trial court's jurisdiction under article 11.09. *See Ex parte Harrington*, 310 S.W.3d 452, 456–58 (Tex. Crim. App. 2010). The State argues that because Trotti "failed to demonstrate that his current confinement. . . [and] loss of street and good time are collateral consequences of the conviction in this case rather than a result of his parole revocation," we should dismiss the appeal for lack of jurisdiction. But applicants need not prove a right to relief to get through the post-conviction jurisdictional door. *See Ex parte Shay*, 507 S.W.3d 731, 733 (Tex. Crim. App. 2016) (rejecting theory that an applicant not physically confined must "demonstrate that not only is he suffering a collateral consequence from his conviction, but that granting the relief sought would remove the fact of the collateral consequence or mitigate the length of the collateral consequence"). Here, the record reflects that the trial court had the parole paperwork before it at the time it ruled on Trotti's habeas application. And in ruling on the merits of the application and entering findings

and conclusions, it impliedly found that Trotti had demonstrated sufficient collateral consequences to seek habeas relief. *See Diamond*, 613 S.W.3d at 544. We conclude that the trial court's implied finding that it had jurisdiction to consider the merits of this application was supported by the record. *See Ex parte Harrington*, 310 S.W.3d at 457–58; *Tatum v. State*, 846 S.W.2d 324, 327 (Tex. Crim. App. 1993) (per curiam); *Collazo*, 264 S.W.3d at 126. We therefore turn to the substance of Trotti's arguments.

### *Validity of the Judgment*

"Subject-matter jurisdiction depends not only on the grant of authority to the trial court in the Constitution and the statutes, but also on its being invoked for the particular case before the court by the State's pleadings." *Trejo v. State*, 280 S.W.3d 258, 260 (Tex. Crim. App. 2009). District courts have jurisdiction over not only the felonies and misdemeanors alleged in an indictment, but also the lesser felonies and misdemeanors "included in the indictment." *Murray v. State*, 302 S.W.3d 874, 877 (Tex. Crim. App. 2009).

Under the Court of Criminal Appeals's opinion in *Hall v. State*, an offense is a lesser-included offense of another offense if the indictment for the greater offense either: (1) alleges all elements of the lesser-included offense; or (2) alleges facts from which all elements of the lesser-included offense can be deduced. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). If the greater offense can be committed in more than one manner, the manner alleged establishes the suitable lesser-included offenses—"the relevant inquiry is not what the evidence may show but what the State is required to prove to establish the charged offense." *Rice v. State*, 333 S.W.3d 140, 145–46 (Tex. Crim. App. 2011) (internal quotation marks omitted). *Hall*'s construction of the definition of a lesser-included offense controls even in the plea bargain context. *Murray*, 302 S.W.3d at 876, 881 ("the cognate-pleadings test adopted in *Hall* applies to all prosecutions, whether trial is had before judge or jury").

Count I, from which the lesser offense of assault was derived, alleged that Trotti "did intentionally and knowingly cause the penetration of the MOUTH of the . . . complainant, by THE DEFENDANT'S SEXUAL ORGAN, said act having been committed without the consent of the complainant, in that THE DEFENDANT COMPELLED THE COMPLAINANT TO SUBMIT AND PARTICIPATE BY THE USE OF PHYSICAL FORCE AND VIOLENCE." *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(B), (b)(1). A person commits an offense of assault-bodily injury if the person "intentionally, knowingly, or recklessly causes bodily injury to another[.]" *Id*. § 22.01(a)(1). "'Bodily injury' means 'physical pain, illness, or any impairment of physical condition.'" *Id*. § 1.07(a)(8). Bodily injury is not an element of sexual assault or even aggravated sexual assault. *See McKithan v. State*, 324 S.W.3d 582, 588–90 (Tex. Crim. App. 2010). Because assault causing bodily injury requires an additional element not required for the offense of sexual assault, it is not a true lesser-included offense. *Hall*, 225 S.W.3d at 535; *McKithan*, 324 S.W.3d at 590.

But this does not mean that Trotti's judgment is void. The trial court had both subject matter and personal jurisdiction over Trotti by virtue of the felony indictment against him. The Court of Criminal Appeals's opinion in *Trejo v. State* is instructive on this point. 280 S.W.3d at 260. There, the indictment alleged the offense of aggravated sexual assault and the "court's charge authorized the jury to convict for that offense or for any of three lesser offenses: sexual assault, aggravated assault, or assault." *Id*. The appellant did not object to the submission of the lesser offenses, and the jury found him guilty of aggravated assault. *See id*. On appeal, he argued that aggravated assault was not a lesser-included offense of the aggravated sexual assault that was alleged in the indictment, so the trial court lacked jurisdiction to convict him of that lesser offense. *Id*. The Court of Criminal Appeals disagreed, reasoning "[a]lthough the trial court may have erred in its charge

to the jury, it had jurisdiction to commit the error." *Id*. at 261.[1] For the same reason, we recognize that while the trial court may have lacked *authority* to allow the plea on an offense that was not included in the alleged offense, it had the *jurisdiction* to allow it. *Id*. at 260; *see also Benavidez v. State*, 323 S.W.3d 179, 180–82 (Tex. Crim. App. 2010) ("improper submission of the lesser-but-not-included offense was not jurisdictional, but merely trial error").

We further conclude that, under the circumstances of this case, Trotti is estopped from complaining about that lack of authority. *Cf. Murray*, 302 S.W.3d at 876, 882–83 (appellant not estopped from raising complaint that misdemeanor offense he pled guilty to was not included within the charged offense because before judgment was rendered, he objected to proceeding further on the misdemeanor offense for that very reason). Here, Trotti accepted the benefit of the plea bargain—relief from prosecution for the higher-level offense. *See Rhodes v. State*, 240 S.W.3d 882, 892 (Tex. Crim. App. 2007). Because "through his own conduct he helped procure and benefit from the illegality," he cannot now complain about an error about which he failed to timely object and from which he benefited. *Id*.; *Woodard v. State*, 322 S.W.3d 648, 659 (Tex. Crim. App. 2010) (appellant barred from complaining that trial court erred in instructing jury on unindicted conspiracy offense where he "helped prepare the charge, including the instruction related to the unindicted charge of conspiracy to commit aggravated robbery"). Since Trotti's "present claim is 'inconsistent' with his 'prior conduct,'" he is estopped from raising it. *Ruffins v. State*, 666 S.W.3d 636, 642 (Tex. Crim. App. 2023). The trial court's ruling that the judgment is not void—though based on an erroneous determination that the misdemeanor offense was included within the scope of the felony Trotti was charged with committing—is correct under *Trejo*, 280

---

[1] In *Trejo*, the Court of Criminal Appeals also wrote, "We also have held that a defendant may not benefit from a lesser-included-offense instruction and then attack his conviction of that lesser-included offense on the ground that it was barred by limitation. The doctrine of estoppel would prevent the party from presenting such a claim." *Id*. at 260.

S.W.3d at 260, and *Rhodes*, 240 S.W.3d at 892. And we are required to uphold the trial court's ruling if it is correct under any theory of applicable law. *Diamond*, 613 S.W.3d at 544–45. For that reason, we overrule Trotti's first issue on appeal.

### *Validity of Plea*

"A defendant has a Sixth Amendment right to effective assistance of counsel in guilty-plea proceedings." *Ex parte Harrington*, 310 S.W.3d at 458. "[W]hen a person challenges the validity of a plea entered upon the advice of counsel, contending that his counsel was ineffective, the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty to the charged offense and would have insisted on going to trial." *Id*. (internal quotation marks omitted). "When counsel's representation falls below this standard, it renders any resulting guilty plea involuntary." *Id*. at 458–59.

In his application, Trotti claimed trial counsel:

- failed to obtain a copy of surveillance video from a nearby VIA bus depot he alleged existed;

- failed to impeach the complainant's version of events when she testified;

- failed to uncover the complainant's criminal history, which showed that she advertised as a paid escort beginning in 2006;

- failed to interview potential defense witnesses Christopher Gonzales and James Woods;

- induced him to plead no contest by concealing from him that the complainant lied on the witness stand, convincing him that there was a reasonable likelihood that he would be convicted if he did not accept the plea offer, and telling him that if he pled no contest to the lesser offense, his parole in his prior offense would remain intact; and

- lied to him by telling him that he could get life in prison if convicted of the sexual assault counts.

The trial court ordered Trotti's trial counsel to respond to the allegations. Counsel filed affidavits averring:

- neither the San Antonio Police Department nor VIA acquired video from the bus depot;

- counsel uncovered the complainant's theft conviction which contained a stipulation that she advertised as an escort to set up a robbery and used that stipulation to obtain the mid-trial misdemeanor plea offer;

- counsel interviewed Christopher Gonzales and James Woods, who knew the complainant worked as a prostitute, and counsel planned to present those witnesses during the defense case-in-chief;

- counsel did not induce Trotti to plead no contest and did not tell him that if he pled no contest to the lesser offense, his parole in his prior offense would remain intact but instead explained that parole was a separate legal matter; and

- counsel expressed concern to Trotti that Texas Penal Code section 12.42(c)(2) required a life sentence if he were convicted of sexual assault because of his prior aggravated sexual assault offense.

The trial court found both defense counsel truthful and credible and incorporated their affidavits into its findings:

> The court finds that Applicant's attorneys did not force him to take the State's plea offer. Nevertheless, given the evidence that had already been presented during the bench trial, given that Applicant's acquittal of the sexual assault charges was not a sure-thing, and given the fact that Applicant was facing a minimum sentence of 25 years/maximum of life, this court finds that whatever advice Applicant's attorneys gave him that might have convinced him to take the plea offer would have been within the range of competence demanded of attorneys in criminal cases. Applicant's attorneys had a reasonable "trial strategy." But, regardless of what their "trial strategy" was, they struck a favorable deal for Applicant under these circumstances.

Trotti argues the trial court abused its discretion by crediting his attorneys' assertions over his own. But we afford almost total deference to a trial court's factual findings which are supported by the record, especially when those findings are based on credibility and demeanor. *Diamond*, 613 S.W.3d at 544. In arguing prejudice, Trotti focuses on counsel's alleged lack of investigation

and the failure to uncover the VIA surveillance video which, he argues, could show that the complainant entered Trotti's car voluntarily, rather than involuntarily, as she testified. That, "in turn" could have led the factfinder to rationally acquit Trotti altogether. But the record reflects that neither the State nor the defense investigators could locate any such video. Further, as noted by the trial court, whether the complainant did or did not willingly enter Trotti's vehicle "does not in any way dispute her claims of sexual assault."

We agree with the trial court that Trotti failed to prove his ineffective assistance or involuntary plea claim. "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Brady v. United States*, 397 U.S. 742, 757 (1970). Counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Ex parte Harrington*, 310 S.W.3d at 459. Further, there is no reasonable probability that, but for any of his attorneys' errors, Trotti would not have pled no contest to the misdemeanor charge and would have insisted on continuing trial and risking a life sentence. *See id*.

## CONCLUSION

Because the record and applicable law support the trial court's denial of habeas relief, we affirm the trial court's order.

Beth Watkins, Justice

DO NOT PUBLISH